**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ENRIQUE BRATHWAITE,** ) | |
| **4509 13th St., NW** ) | |
| **Washington, D.C. 20001** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | **Case No. 1:06-cv-01367-GK** |
| **v.** ) | |
| ) | |
| ) | |
| **VANCE FEDERAL SECURITY** ) | |
| **SERVICES, INC.** ) | |
| **10467 White Granite Drive** ) | |
| **Oakton, VA 22124** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiff Enrique Brathwaite ("Brathwaite" or "Plaintiff") claims that he was discriminated against on the basis of his race (African-American) in violation of Title VII and 42 U.S.C. §1981, and terminated in violation of public policy because he complained that he was the victim of an assault and battery.  Plaintiff's discrimination claims should be dismissed, however, because he cannot state a *prima facie* case.  Defendant Vance Federal Security Services, Inc. ("Vance" or "Defendant") conducted a fair and thorough investigation and concluded that Plaintiff started a fight at work.  This violation of Vance's policies led to

1

Plaintiff's termination and provides a legitimate, non-discriminatory business reason for the discharge decision.  Brathwaite has no evidence of pretext to rebut that non-discriminatory reason and, therefore, his Title VII and Section 1981 claims fail.  Indeed, his Title VII claim is barred by the statute of limitations because he did not file his administrative charge until well after a year following his discharge.  Finally, his public policy claim should be dismissed because there is no public policy exception to the rule of at-will employment for complaining about an assault and battery.  This Court should grant Defendant's Motion for Summary Judgment on these grounds.

## II.    STATEMENT OF UNDISPUTED FACT

### A.    Background

Plaintiff was hired by Vance on or about September 15, 2003.  Plaintiff's Deposition ("Pl. Dep."), 9:10-14, 12:9-18.[1]  He worked for Defendant as a Security Officer at Walter Reed Army Medical Center.  Deposition of Ian Timothy McManus, 6:16-19.[2]  He was informed of his discharge by Thomas Sittner ("Sittner"), Project Manager and Chief of Guards, on March 24, 2004 for committing an assault while on duty.   Pl. Dep., Ex. 15.   Plaintiff acknowledged that he was required to abide by Defendant's Standards of Conduct and that Vance had the authority, in its sole discretion, to determine the penalty for violating those Standards.  Pl. Dep., 13:18-16:1.

Those Standards provide that:

> The following are examples of conduct that are inappropriate.  …
> Engaging in such conduct can result in any form of discipline, up

---

[1]    Relevant pages from Plaintiff's Deposition are attached as Exhibit A to the Declaration of Tyler A. Brown ("Brown Decl."), filed in support of the instant motion.  Exhibits to Plaintiff's deposition are attached collectively as Exhibit B to Brown Decl.

[2]    Relevant pages from the McManus deposition are attached to the Brown Decl. as Exhibit C.

to and including immediate termination, as decided in the discretion of Chenega/Vance Federal Security Services. … *Assault*.[3] [Emphasis added.]

Pl. Dep. Ex. 3.

## B.    Plaintiff's Poor Disciplinary History

During his relatively short tenure with Vance, Brathwaite demonstrated his inability or refusal to abide by Vance's rules. He received three disciplinary write-ups during his six months of employment. The first disciplinary warning Brathwaite received involved an incident on December 6, 2003. Pl. Dep., Ex. 5. He was charged with speaking in a disrespectful and unprofessional manner to a client. *Id.* The second incident occurred on December 18, 2003. Pl. Dep., Ex. 6. Brathwaite received a disciplinary warning for abandoning his post and removal of his firearm from his post. *Id.* Finally, on February 19, 2004, he received a written warning for improperly loading his weapon inside the security booth. Pl. Dep., Ex. 7. On each of these three occasions, Plaintiff denied the incident occurred and had an explanation for what happened. *Id.*

## C.    Plaintiff Started a Fight with a Co-Worker

On March 13, 2004, at approximately 2:30 p.m., Plaintiff was working at the security booth at Walter Reed. Deposition of Tim McManus ("McManus Dep."), Ex. 18; Deposition of Thomas Sittner ("Sittner Dep."), 8:8-9:4.[4] There were four other security officers assigned to that post and on duty that day: Officers Shawn Verdine ("Verdine"), William Collins ("Collins"),

---

[3]    Some of the Vance documents refer to Chenega. Chenega was originally the prime contractor and Vance was the subcontractor at Walter Reed. McManus Dep., 7:1-10. Other than that, Chenega has no involvement in this action in any way. It is undisputed that Plaintiff was a Vance employee and that he was discharged by Vance personnel.

[4]    Exhibit 18 to the Deposition of Tim McManus (the investigative report prepared by Tom Sittner recommending Plaintiff's discharge) is attached as Exhibit D to the Brown Decl. Relevant pages from the Sittner Dep. are attached as Exhibit E to the Brown Decl.

Melvin Blassingame ("Blassingame") and Joseph Barnett ("Barnett"). *Id.* Verdine is Caucasian and the other security officers are all African-American. Pl. Dep., 32:19-20; 33:11-12; 41:3-8.

It is undisputed that an altercation of some kind occurred between Plaintiff and Verdine. Not surprisingly, Plaintiff alleges that Verdine started the fight and Verdine alleges that Plaintiff started the fight. In order to sort out this situation and try to find out what really happened, Vance conducted an investigation immediately.

Plaintiff's immediate supervisor, Lieutenant Green, conducted an investigation the same day of the incident and took written statements from Plaintiff and the independent witnesses, Officers Barnett and Blassingame. Pl. Dep., 86:15-87:21; Pl. Dep., Ex. 12; Sittner Dep., 11:11-12:1; 13:10-14:9; Sittner Dep., Exs. 21 and 23.[5] Both those Barnett and Blassingame confirmed that Plaintiff had started the fight. *Id.*

On March 18, 2004, Sittner also conducted an investigation and prepared a summary of the events and his conclusions. McManus Dep, Ex. 18; McManus Dep., 15:13-21. Sittner's investigation included interviewing and re-interviewing the Plaintiff, the other security guards on duty, Walter Reed police officers and passersby, as well as reviewing the available videotape footage. *Id.* Based on all these interviews, Vance management understood the following events took place: Brathwaite refused to relieve Verdine from carrying a shotgun so that Verdine could take lunch. After a different officer took the shotgun, Verdine went to retrieve his lunch from the rear of the guard shack. Plaintiff then approached Verdine from behind and pushed him, thus committing an assault. Verdine responded by pushing Brathwaite. *Id.*

Specifically, during the course of Sittner's investigation, Barnett told Sittner that he saw

---

[5]    Exhibits from the Sittner Dep. are attached to the Brown Decl. as Exhibit F.

Brathwaite push Verdine from behind.  Sittner Dep., Ex. 22.  Blassingame told Sittner that he saw Verdine "go forward" and then say, "don't push me."  Sittner Dep., Ex. 24.  Only after hearing these unbiased accounts of the situation and conducting the rest of his investigation did Sittner suspend Plaintiff (on March 19, 2004) and recommend Plaintiff's termination for violating Vance's Standards of Conduct prohibiting assault.  McManus Dep., Ex. 18; Pl. Dep., Ex. 14.

In his investigative report to his supervisor, Defendant's Operations Manager, I. Timothy McManus ("McManus"), Sittner concluded:

> I believe that Officer Brathwaite was the aggressor in this matter.  I also believe that he has lied in his statements.  They are not consistent and he refused to sign the statement that I took from him.  Most compelling are the statements from Barnett and Blassingame.  Barnett witnessed Brathwaite push Verdine first and Blassingame heard Verdine say "don't push me", just before he heard the noise of Brathwaite falling.  This type of spontaneous utterance is a clear indication that Verdine had been pushed and was reacting instead of being the aggressor.  [McManus Dep., Ex. 18.]

After reviewing Sittner's recommendation, McManus concurred and authorized Plaintiff's termination.  McManus Dep., 25:18-26:6.  Plaintiff was informed of his discharge on March 24, 2004.  Pl. Dep., Ex. 15.  McManus had never met Brathwaite and had no idea what race he was.  Pl. Dep., 121:6-19; Declaration of Ian Timothy McManus, ¶ 2.  At no time did Plaintiff's race play any role whatsoever in Defendant's decision to terminate Plaintiff's employment, and Plaintiff has no evidence that it did.

Plaintiff argues that Vance should have disciplined Verdine in some manner.  McManus addressed this issue in his deposition and stated that he would not reprimand or counsel an individual who the Company believed was *not* the aggressor in the incident.  McManus Dep.,

18:13-19.

### C.    Although it is Irrelevant to the Issue of Discrimination, Plaintiff Has a Different Account of the Fight with Verdine

Not surprisingly, Plaintiff says that it was Verdine, not Plaintiff, who started the fight.  Pl. Dep., Ex. 13.  He also says that Verdine spit in his face twice and that he showed the spit to the Provost Marshall before wiping it off.  *Id.*  Sittner's investigation revealed that Plaintiff appeared in the Provost Marshall's office with some liquid on his face.  Sittner Dep., 22:5-24:21. However, Sittner found Plaintiff's account regarding the spit to be incredible because he could not believe that anyone would walk from the security booth to the Provost Marshall's office without wiping off the spit.  *Id.*  Plaintiff's story that he wanted to show someone the evidence simply did not make sense.  *Id.*

As noted above, Sittner also found that there were troubling variations in Plaintiff's story. For example, in his first statement, Brathwaite told Green that the first time Verdine contacted him in any way was with the shotgun, when he shoved it towards Brathwaite.  Pl. Dep., Ex. 12; McManus Dep., Ex. 18.  Yet, when Sittner interviewed Brathwaite, he said that no such contact took place.  Pl. Dep., Ex. 13; McManus Dep., Ex. 18.  It was also significant to Sittner that Brathwaite refused to sign the statement that Sittner took (despite the fact that Plaintiff testified at this deposition that the statement was accurate, with one small change).  McManus Dep., Ex. 18; Pl. Dep., Ex. 13; Pl. Dep., 102:5-105:22.

For all these reasons, Sittner decided not to credit Plaintiff's version of events, but rather to believe the two unbiased eyewitnesses (Barnett and Blassingame) who confirmed that Plaintiff was the aggressor.

**D.      Plaintiff's Administrative Charge of Discrimination was Dismissed**

Plaintiff filed a charge with Equal Employment Opportunity Commission ("EEOC") on April 28, 2005, over a year after Vance terminated his employment.  Pl. Dep. Ex. 8.  Plaintiff submitted all evidence he had in support of his case to the EEOC.  Pl. Dep., 37:7-10. Nonetheless, on February 21, 2006, the EEOC dismissed the charge and found: "Based on the information obtained during the course of the investigation, the facts are not supported by the evidence.  You submitted your rebuttal, which had no information to show that you were discriminated against because of his [sic] race (Black)."  Pl. Dep., Ex. 9.

**III.    ARGUMENT**

**A.      Summary Dismissal of Frivolous and Factually Unsupported Claims Like Those of Plaintiff Is Favored**

This case is ripe for granting summary judgment.  Where, as here, the plaintiff's evidence is so insignificant and weak that no reasonable fact-finder could conclude anything but that the claims are supported by less than a preponderance of the evidence:

> [T]here is no issue for trial unless there is <u>sufficient</u> evidence favoring the non-moving party for a jury to return a verdict for that party. . . . If the evidence is <u>merely colorable</u> . . . or is <u>not significantly probative</u> . . . summary judgment may be granted.
>
> \* \* \*
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge <u>must</u> direct a verdict if, under the governing law, there can be but one <u>reasonable</u> conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 254, 106 S.Ct. 2505, 2511, 2513 (1986) (citations omitted).

7

This encouragement of summary dismissals was echoed in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986), where the court instructed that the moving party need not (since usually it cannot) prove the absence of a genuine issue of material fact:  "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the non-moving party's case."  *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

Beyond that, in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986), the Court directed that the non-movant must come forward with more persuasive evidence than would otherwise be necessary to establish a genuine issue as to an essential element of its claim "if the factual content renders [the non-movant's] claim implausible. . . ."  [Emphasis added.]  Lastly, summary judgment is *not* a disfavored procedural shortcut, but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case.  *Marshall v. James*, 276 F.Supp. 41, 47 (D.D.C 2003).

**B.    This Court Should Apply the Shifting Burdens Test To Determine Whether Plaintiff Can Prove Discrimination**

When a plaintiff in a discrimination suit does not have any direct proof of discrimination (as is the case here), he may use the indirect method established by the Supreme Court.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973).  Under this indirect method of proof, if the plaintiff can establish a *prima facie* case of employment discrimination by offering evidence that gives rise to an inference of unlawful discrimination, the parties engage

in a set of shifting burdens. *Burdine*, 450 U.S. at 253.[6]

If the plaintiff establishes the elements of the *prima facie* case, the burden of production shifts to the defendant, who is then required to *articulate* a legitimate, non-discriminatory reason for the employer's decision. *Burdine*, 450 U.S. at 254-55. In meeting this requirement, an employer bears only a "minimal burden of articulation." *Perryman v. Johnson Products Co.*, 698 F.2d 1138 (11th Cir. 1983). If the Defendant succeeds in articulating a legitimate, non-discriminatory reason, the presumption created by the *prima facie* case "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

At this point, then, the Court must decide whether a reasonable jury could infer intentional discrimination from "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)). This boils down to two inquiries: could a reasonable jury infer that the employer's given explanation was pretextual, and, if so, could the jury infer that this pretext shielded discriminatory motives? *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005).

The plaintiff then carries the heavier burden of proving that the proffered reason for the decision is pretextual. *Burdine*, 450 U.S. at 255-56. At all times, the ultimate burden of proving

---

[6]     Race discrimination claims under Section 1981 are governed by the same evidentiary framework applicable to Title VII race discrimination claims. *Carney v. American Univ.*, 151 F.3d 1090, 1092-93 (D.C. Cir. 1998); see

discrimination rests with the plaintiff.  Id.  To survive summary judgment the plaintiff must show

that a reasonable jury could conclude from all of the evidence that the adverse employment

decision was made for a discriminatory reason. See *Aka v. Washington Hosp. Ctr.,* 156 F.3d

1284, 1290 (D.C. Cir. 1998) (en banc).  Plaintiff's speculation that race was a factor is not

evidence and will not defeat summary judgment.  *See McGill v. Munoz,* 203 F.3d 843, 846 (D.C.

Cir. 2000) (speculation is not evidence); *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999)

(holding speculation insufficient to avoid summary judgment).

### C.    Brathwaite Cannot Establish a *Prima Facie* Case of Discrimination

To establish a *prima facie* case of discriminatory discharge, Brathwaite must show:

> (1) that [he] belongs to a protected class, (2) that [he] performed at or near
> the level legitimately expected by [his] employer, (3) that [he] was
> discharged, and (4) that [he] was replaced by a person outside the
> protected class or that similarly situated individuals outside the protected
> class were retained.

*Park v. Washington Metro. Area Transit Auth.,* 892 F. Supp. 5, 10 (D.D.C. 1995), *aff'd,*

107 F.3d 924 (D.C. Cir. 1996); *see also Neuren v. Adduci, Mastriani, Meeks & Schill,* 43

F.3d 1507, 1512 (D.C. Cir. 1995).

### 1.    Brathwaite Did Not Meet Vance's Legitimate Work Expectations

In *Mianegaz v. Hyatt Corp.*, 319 F. Supp. 2d 13 (D.D.C. 2004), the plaintiff violated

company rules.  The plaintiff claimed that younger employees who violated the same rules were

not fired.  The D.C. federal district court held that the plaintiff could not establish a *prima facie*

---

also, *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996); *Davis v. KARK-TV, Inc.*, 421 F.3d 699,
703 (8th Cir 2005); *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004).

case of discrimination because his rule violations meant he did not meet his employer's expectations:

> Right out of the starting gate, the plaintiff fails to prove that he was performing his job well enough to meet this employer's legitimate expectations.  Indeed, the record demonstrates that the plaintiff's job performance did not meet defendant's legitimate expectations  . . .  To begin with, the defendant received several reports that the plaintiff directed inappropriate, profane, and abusive language at his co-workers.  This sort of behavior violates the defendant's rules for employee conduct. . . .  In a rather terse response, the plaintiff merely opines that these allegations are untrue, advancing no probative evidence that he performed his job well enough to meet the defendant's legitimate expectations.

*Id.* at 21; *see also Plummer v. Safeway, Inc.*, 1995 U.S. Dist. Lexis 3428 *10, No. 93-0316 (PLF) (D.D.C. March 17, 1995) (plaintiff who breached employer policies could not establish *prima facie* case).[7]

Similarly, in *Rowe v. James Kidd*, 731 F.Supp. 534 (D.D.C. 1990), the court dismissed the plaintiff's claim of discrimination because the plaintiff could not rebut the undisputed evidence showing that his performance did not meet company standards.  In so doing, the court held that:

> It is not necessary for this Court to pass on the wisdom of those standards.  It is not the business of a court hearing a Title VII case to 'second-guess an employer's personnel decisions absent demonstrably discriminatory motive.'
>
> *Id.* at 537, n.2., quoting *McCormick v. District of Columbia*, 554 F. Supp. 640,

646 (D.D.C. 1982).

Brathwaite failed to meet Vance's legitimate expectations when Brathwaite received three written warnings in a span of only three months, then was found to have instigated a fight

---

[7]     A true and correct copy of this case is attached to the Brown Decl. as Exhibit H.

with a co-worker.  It is undisputed that Brathwaite knew Vance had a rule prohibiting workplace violence.  It is undisputed that two independent and unbiased eyewitnesses told Sittner that Brathwaite was the aggressor and pushed Verdine.  It is undisputed that Plaintiff's accounts of the incident were inconsistent and that Sittner found him not to be credible.  Like the plaintiff in *Mianegaz,* Plaintiff's only response is to claim that the allegations against him are untrue.  As the *Mianegaz* court found, this is an insufficient response to prove a *prima facie* case.

The fact that Brathwaite's account of the fight is different is not the relevant inquiry.  It is undisputed that McManus was presented with a recommendation based on a thorough investigation by disinterested managers.  There is no evidence to suggest that Sittner arrived at his conclusion based on Plaintiff's race, nor is there any evidence to suggest that McManus even knew that Plaintiff was African-American.  Under those circumstances, the fact that Plaintiff tells a different story is not enough to establish a *prima facie* case.

As in *Mianegaz*, the undisputed record evidence shows Brathwaite violated Vance's rule and did not meet Vance's legitimate expectations.  Accordingly, Brathwaite cannot establish a *prima facie* case of discrimination.  Vance asks the Court to grant it summary judgment on Plaintiff's first and second causes of action (Title VII and Section 1981) on this basis.

### 2.    Vance Terminated All Employees<br>Who Violated the Rule at Issue

In *Mianegaz*, the D.C. federal court found the plaintiff could not establish a *prima facie* case because the plaintiff could not identify any younger employees who committed the same violations and were not terminated.  In dismissing the plaintiff's claims, the Court also relied upon the fact the defendant disciplined younger employees for similar violations:

> The defendant offers considerable evidence indicating that it treated younger employees no differently than the plaintiff. Specifically, the defendant provides evidence that it suspended several younger employees for using inappropriate, profane, or abusive language and other unprofessional conduct involving guests, supervisors and co-workers. The defendant also reveals that it terminated several of its younger employees for falsifying employment-related documents.

319 F. Supp. 2d at 22.

Here too, it is undisputed that Vance treats all employees no differently than Brathwaite. A few months after Plaintiff was discharged, Vance also terminated the employment of two officers -- one Caucasian, one African-American -- who were found to have been fighting; one of those officers, coincidentally, was Verdine. Sittner Dep., 37:2-38:19; Brown Decl., Exhibit G. In that case, both officers were found to be at fault, as opposed to Verdine's incident with Brathwaite in which Verdine had been found to merely react to Plaintiff's assault. *Id.*

As in *Mianegaz*, Brathwaite cannot identify a single Vance employee outside his protected classes who committed a similar rule violation and was not terminated. He points to Vance's decision not to terminate Verdine for the incident on March 13, but forgets that Verdine is not similarly situated. McManus Dep., 18:13-19. He was not found to have started the fight, but only to have reacted to Brathwaite's assault. Under those circumstances, McManus did not feel it was appropriate to discipline Verdine. Therefore, Verdine is not an apt comparator and Brathwaite is left with no evidence of any instigator of a fight who was not terminated, regardless of race. Vance's undisputed evidence proves Brathwaite cannot establish a *prima facie* case. Accordingly, Vance requests summary judgment on the first and second counts on this basis as well.

### 3.    Brathwaite Was Replaced By a Security Officer of the Same Race

Brathwaite also cannot establish a *prima facie* case of race discrimination because he was not replaced by someone "outside his protected class."  *See Murray,* 406 F.3d at 715 (a replacement within the same protected class cuts strongly against any inference of discrimination).  It is undisputed that Brathwaite was replaced by an African-American, Norris Hercules, who was hired on April 12, 2004.  Declaration of Jerry Sargent ("Sargent Decl."), ¶ 2.  Therefore, Brathwaite cannot establish a *prima facie* case on the basis of race.

### D.    Vance had a Legitimate, Non-Discriminatory Business Reason for Discharging Plaintiff

If a plaintiff establishes a *prima facie* case of discrimination, his claim may still fail where the defendant had a legitimate non-discriminatory reason for terminating the plaintiff.  See *Gleklen v. Democratic Congressional Campaign Committee, Inc*., 199 F.3d 1365 (D.C. Cir. 2000).  In *Gleklen*, the plaintiff alleged she was terminated in violation of the D.C. Human Rights Act and Pregnancy Discrimination Act.  Despite establishing a *prima facie* case of discrimination, the court held the plaintiff's claim failed because the defendant proffered a legitimate non-discriminatory reason for her termination.  *Id*. at 1369.

Violation of workplace rules is a legitimate business reason for termination and satisfies the employer's burden under the second step in the traditional burden-shifting analysis.  *See Plummer*, 1995 U.S. Dist. Lexis 3428 **10-11 (employer satisfied its burden by articulating plaintiff's failure to follow rules as reason for termination.)

Here, Vance's legitimate business reason for terminating Brathwaite is Brathwaite's violation of Vance's rule against physical assaults.  Accordingly, Vance has satisfied its burden of articulating a legitimate business reason.  As explained below, Vance is entitled to summary judgment because Brathwaite cannot establish that Vance's reason is pretext.

**E.     There Is No Evidence Of Pretext**

If the defendant satisfies the burden of production [by articulating a legitimate, non-discriminatory reason for plaintiff's termination], the burden of proof rests on plaintiff to prove that the employer's reason was merely a pretext for unlawful discrimination. *Milliner v. District of Columbia*, 932 F.Supp. 345, 351 (D.D.C. 1996).

In *Waterhouse v. District of Columbia*, 298 F.3d 989 (D.C. Cir. 2002), the District of Columbia Circuit Court of Appeals held that the plaintiff could not establish pretext because she could not dispute the facts supporting the reasons for her termination:

> Nor did Waterhouse offer sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision. According to defendants, Waterhouse was fired due to poor job performance. . . . [T]here was no genuine issue regarding Waterhouse's failure to fulfill her basic job responsibilities, largely because she failed to dispute many, if not most, of the facts on which defendants rely to support their termination decision.
>
> *          *          *
>
> Because Waterhouse did not contravene – and in fact admitted – many of the deficiencies the defendants cited concerning her performance, she failed to establish that her employer's proffered explanation was unworthy of credence.

*Id.* at 994-95 (citations and quotations omitted); *see also Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (to establish pretext, plaintiff must show the employer's reason for termination "is a phony reason").

Here, Plaintiff certainly disputes that he started the fight.  However, that is insufficient to show pretext. The only relevant point, which he cannot rebut, is that Sittner based his recommendation, and McManus based his decision, on two witnesses who said that Brathwaite instigated the assault.  Given those accounts, and Plaintiff's own inconsistent statements, which

he also cannot dispute, Plaintiff cannot show that basing the termination decision on Sittner's thorough investigation was a "phony reason."

In *Hitt v. Harsco Corp.,* 356 F.3d 920 (8th Cir. 2004), the court dealt with this exact situation in the age discrimination context. There, eyewitness reports stated that the protected-age plaintiff fully participated in a fight with a co-worker. Even though it later turned out that those reports were wrong, the key question asked by the court was not whether the plaintiff truly participated in the fight, but whether the employer really believed that the employee had been a participant when it made the discharge decision. *Id.* at 924-25. Because the court found no reason to disbelieve the bona fide nature of the employer's discharge decision, summary judgment was granted.

The court reached a similar decision in *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416 (7th Cir. 2006). Like here, the plaintiff discharged for harassment contended employer's investigation was shoddy and he did not commit the acts of which he was accused.[8] The court found that whether the plaintiff actually committed those acts was not the issue. *Id.* at 417. Rather, the issue is not whether the employer was correct "but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Id.* at 417. The court stated that if it is the true ground for the action, regardless of whether the employer's conclusion was correct, the case is over. "A pretext . . . is a deliberate falsehood. . . . An honest mistake, however dumb, is not, and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage." *Id.* at 419.

---

[8]      Yet, Brathwaite admits he has no idea what Sittner did to conduct his investigation. Pl. Dep., 99:13-22. Brathwaite's claim that an allegedly poor investigation is evidence of discrimination is completely unfounded.

In this case, there is no question that the fight and Vance's conclusions with regard to the identity of the guilty party are the real reasons Plaintiff was discharged.   Plaintiff has no evidence to the contrary.   Therefore, summary judgment should be granted.

**1.    Vance's Treatment of Other
       <u>Employees Proves There Was No Pretext</u>**

In *Plummer, supra,* the plaintiff claimed he was terminated due to his race and sex.   This Court found there was no evidence of pretext because the plaintiff could not identify any similarly situated employees outside his protected class that were treated differently:

> There is simply no evidence in the record that Safeway favored any similarly situated African-American female employees, or anyone else, over white male employees, including Mr. Plummer, or that Safeway failed to discipline or discharge anyone else for conduct nearly identical to plaintiff's. . . . Plaintiff has failed to demonstrate that there is a genuine issue of material fact that his termination by Safeway for breaching customer relations policy was a pretext for a discriminatory employment decision.

*Id.* at **13-14.

Here too, there is no evidence that Vance failed to discharge any employee with nearly identical conduct to Brathwaite.   The undisputed facts show Vance terminated two other employees for violating the rule against assaults.   Moreover, one of the other two employees was Caucasian.   As this Court held in *Plummer*, Brathwaite's inability to identify similarly situated employees outside Brathwaite's protected class is fatal to his case.

Other record evidence also shows Plaintiff cannot establish pretext.   For example, McManus, the corporate official who approved Brathwaite's termination, did not know Brathwaite's race.   There is also no evidence (direct or otherwise) that the termination decision was motivated by discrimination.   These facts show no reasonable factfinder could conclude that

Vance discriminated against Brathwaite. Accordingly, Vance requests summary judgment on Plaintiff's Title VII and Section 1981 on this basis as well.

### F.    Plaintiff's Title VII Claim is Barred by the Statute of Limitations

Plaintiff was discharged on March 24, 2004. He did not file his administrative charge with the EEOC until April 28, 2005, almost 400 days later. Pl. Dep., Ex. 8. Accordingly, his Title VII claim is barred by the applicable statute of limitation. *See, Currier v. Radio Free Europe*, 159 F.3d 1363, 1366 (D.C. Cir. 1998) (42 U.S.C. §2000e-5(e)(1) requires that "[a] charge shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful unemployment practice occurred. A three-hundred-day time limit applies when the aggrieved person has initially instituted proceedings with a state or local agency with authority to grant or seek relief from the unlawful practice. See 42 U.S.C. §2000e-5(e)(1)). Only after exhausting this administrative remedy can an aggrieved person bring suit in district court. *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985).

Plaintiff exceeded either the 180 day or 300 day limit for filing his charge and, therefore, may not bring a Title VII action.

### G.    Plaintiff Cannot State a Cause of Action for Termination in Violation of Public Policy

Plaintiff's claim for termination in violation of public policy is meritless. There is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's *refusal* to violate the law, as expressed in a statute or municipal regulation. The burden of proving by a preponderance of the evidence that this was the sole reason shall be on

the fired employee. *See*, *Adams v. George w. Cochran & Co.*, 597 A.2d 28, 34 (D.C. 1991). Plaintiff's allegations do not come close to stating a cause of action under this limited doctrine.

Plaintiff claims that it is against the public policy of the District of Columbia to terminate an employee for filing assault and battery charges against a co-worker. Complaint, ¶ 23. There are several flaws in his argument. First, Brathwaite does not even allege that he refused to violate any law. The heart of the exception to the at-will doctrine is that the employee was fired for being a whistleblower. That is simply not the case here, because Plaintiff only claimed that a co-worker committed an assault, not that Vance did anything illegal or that he refused to do something that was illegal.

Second, Plaintiff does not identify any public policy, whether in the form of statute, code, regulation or judicial holding, which says that an employer may not fire an employee for alleging assault against a co-worker.

Third, there is no evidence that Vance fired Brathwaite for claiming anything against Verdine. Rather, the evidence shows that Vance conducted a thorough investigation and concluded that Plaintiff, not Verdine, was the culpable party and should be discharged. If it had been the claim itself that motivated Vance, there would have been no need for either Green or Sittner to go through all the time it took to take statements and try to get to the bottom of this situation.

Plaintiff cannot sustain a cause of action for wrongful termination in violation of public policy because there is no policy at issue in this case, and, even if there were, Plaintiff did not refuse to do anything and was not terminated for that refusal.

## IV.    CONCLUSION

For the foregoing reasons, Vance asks the Court to grant its motion for summary judgment, enter judgment in Vance's favor on all counts, and dismiss this case with prejudice.

Respectfully submitted,

**JACKSON LEWIS LLP**

February 5, 2007                    By:_____ /s/____
                                    Tyler A. Brown (D.C. Bar No. 480693)
                                    8614 Westwood Center Drive, Suite 950
                                    Vienna, VA 22182
                                    (703) 821-2189
                                    (703) 821-2267 (fax)

                                    **Attorneys for Defendant Vance Federal Security Services, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of February 2007, a copy of the foregoing *Motion for Summary Judgment, Separate Statement of Undisputed Fact, Memorandum of Points and Authorities In Support of Motion for Summary Judgment, Declaration of Jerry Sargent and Declaration of Timothy McManus* were delivered via First Class Mail to:

> Susan L. Kruger, Esq.
> Alan Lescht & Associates, PC
> 1050 17th Street, NW
> Suite 220
> Washington, DC  20036
> (202) 862-4330

                    /s/_____
                    Tyler A. Brown

21