UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENRIQUE BRATHWAITE,<br>4509 13th St., NW<br>Washington, D.C. 20001<br><br>        Plaintiff,<br><br>v.<br><br>VANCE FEDERAL SECURITY<br>SERVICES, INC.<br>10467 White Granite Drive<br>Oakton, VA 22124<br><br>        Defendant. | Case No. 1:06-cv-01367-GK |

**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Defendant Vance Federal Security Services, Inc., through counsel, submits this separate statement of undisputed material facts in support of its motion for summary judgment.

1.  Plaintiff was hired by Vance on or about September 15, 2003.  Plaintiff's Deposition ("Pl. Dep."), 9:10-14, 12:9-18; Exhibit 2 to Pl. Dep.[1]

2.  Plaintiff worked for Defendant as a Security Officer at Walter Reed Army

---

[1] Relevant pages from Plaintiff's Deposition are attached as Exhibit A to the Declaration of Tyler A. Brown ("Brown Decl."), filed in support of the instant motion.  Exhibits to Plaintiff's deposition are attached collectively as Exhibit B to Brown Decl.

1

Medical Center.  Deposition of Ian Timothy McManus, 6:16-19.[2]

3. Plaintiff was informed of his discharge by Thomas Sittner ("Sittner"), Project Manager and Chief of Guards, on March 24, 2004 for committing an assault while on duty.  Pl. Dep., Ex. 15.

4. Plaintiff acknowledged that he was required to abide by Defendant's Standards of Conduct and that Vance had the authority, in its sole discretion, to determine the penalty for violating those Standards.  Pl. Dep., 13:18-16:1.

5. Defendant's Standards of Conduct provide that:

> The following are examples of conduct that are inappropriate.  … Engaging in such conduct can result in any form of discipline, up to and including immediate termination, as decided in the discretion of Chenega/Vance Federal Security Services.  … *Assault*.[3]  [Emphasis added.]

Pl. Dep. Ex. 3.

6. Plaintiff received three disciplinary write-ups during his six months of employment.  The first disciplinary warning Brathwaite received involved an incident on December 6, 2003.  Pl. Dep., Ex. 5.  He was charged with speaking in a disrespectful and unprofessional manner to a client.  *Id.*

7. Plaintiff's second disciplinary incident occurred on December 18, 2003.  Pl. Dep., Ex. 6.  Brathwaite received a disciplinary warning for abandoning his post and removal of his firearm from his post.  *Id.*

---

[2] Relevant pages from the McManus deposition are attached to the Brown Decl. as Exhibit C.

[3] Some of the Vance documents refer to Chenega.  Chenega was originally the prime contractor and Vance was the subcontractor at Walter Reed.  McManus Dep., 7:1-10.  Other than that, Chenega has no involvement in this action in any way.  It is undisputed that Plaintiff was a Vance employee and that he was discharged by Vance personnel.

8.	Plaintiff's third disciplinary incident occurred on February 19, 2004, when he received a written warning for improperly loading his weapon inside the security booth. Pl. Dep., Ex. 7. On each of these three occasions, Plaintiff denied the incident occurred and had an explanation for what happened. *Id.*

9.	On March 13, 2004, at approximately 2:30 p.m., Plaintiff was working at the security booth at Walter Reed. Deposition of Tim McManus ("McManus Dep."), Ex. 18; Deposition of Thomas Sittner ("Sittner Dep."), 8:8-9:4.[4]

10.	There were four other security officers assigned to that post and on duty that day: Officers Shawn Verdine ("Verdine"), William Collins ("Collins"), Melvin Blassingame ("Blassingame") and Joseph Barnett ("Barnett"). *Id.*

11.	Verdine is Caucasian and the other security officers are all African-American. Pl. Dep., 32:19-20; 33:11-12; 41:3-8.

12.	Plaintiff's immediate supervisor, Lieutenant Green, conducted an investigation into the altercation between Plaintiff and Verdine the same day of the incident and took written statements from the independent witnesses, Officers Barnett and Blassingame. Sittner Dep., 11:11-12:1; 13:10-14:9; Sittner Dep., Exs. 21 and 23.[5] Both those witnesses confirmed that Plaintiff had started the fight. *Id.*

13.	On March 18, 2004, Sittner also conducted an investigation and prepared a summary of the events and his conclusions as to the altercation that took place between Plaintiff

---

[4]	Exhibit 18 to the Deposition of Tim McManus (the investigative report prepared by Tom Sittner recommending Plaintiff's discharge) is attached as Exhibit D to the Brown Decl. Relevant pages from the Sittner Dep. are attached as Exhibit E to the Brown Decl.

[5]	Exhibits from the Sittner Dep. are attached to the Brown Decl. as Exhibit F.

and Verdine. McManus Dep, Ex. 18; McManus Dep., 15:13-21.

14. Sittner's investigation included interviewing and re-interviewing the Plaintiff, the other security guards on duty, Walter Reed police officers and passersby, as well as reviewing the available videotape footage. *Id.*

15. Based on all these interviews, Vance management understood the following events took place: Brathwaite refused to relieve Verdine from carrying a shotgun so that Verdine could take lunch. After a different officer took the shotgun, Verdine went to retrieve his lunch from the rear of the guard shack. Plaintiff then approached Verdine from behind and pushed him, thus committing an assault. Verdine responded by pushing Brathwaite. *Id.*

16. During the course of Sittner's investigation, Barnett told Sittner that he saw Brathwaite push Verdine from behind. Sittner Dep., Ex. 22.

17. Blassingame told Sittner that he saw Verdine "go forward" and then say, "don't push me." Sittner Dep., Ex. 24.

18. Only after hearing these unbiased accounts of the situation and conducting the rest of his investigation did Sittner suspend Plaintiff (on March 19, 2004) and recommend Plaintiff's termination for violating Vance's Standards of Conduct prohibiting assault. McManus Dep., Ex. 18; Pl. Dep., Ex. 14 .

19. In his investigative report to his supervisor, Defendant's Operations Manager, I. Timothy McManus ("McManus"), Sittner concluded:

> I believe that Officer Brathwaite was the aggressor in this matter. I also believe that he has lied in his statements. They are not consistent and he refused to sign the statement that I took from him. Most compelling are the statements from Barnett and Blassingame. Barnett witnessed Brathwaite push Verdine first and Blassingame heard Verdine say "don't push me", just before he

      heard the noise of Brathwaite falling. This type of spontaneous utterance is a clear indication that Verdine had been pushed and was reacting instead of being the aggressor. [McManus Dep., Ex. 18.]

20. After reviewing Sittner's recommendation, McManus concurred and authorized Plaintiff's termination. McManus Dep., 25:18-26:6.

21. Plaintiff was informed of his discharge on March 24, 2004. Pl. Dep., Ex. 15.

22. McManus had never met Brathwaite and had no idea what race he was. Pl. Dep., 121:6-19; Declaration of Ian Timothy McManus, ¶ 2.

23. McManus believed that it was not appropriate to discipline Verdine because McManus did not believe Verdine was the aggressor in the incident. McManus Dep., 18:13-19.

24. Plaintiff says that it was Verdine, not Plaintiff, who started the fight. Pl. Dep., Ex. 13.

25. Plaintiff states that Verdine spit in his face twice and that he showed the spit to the Provost Marshall before wiping it off. *Id.*

26. Sittner's investigation revealed that Plaintiff appeared in the Provost Marshall's office with some liquid on his face. Sittner Dep., 22:5-24:21.

27. However, Sittner found Plaintiff's account regarding the spit to be incredible because he could not believe that anyone would walk from the security booth to the Provost Marshall's office without wiping off the spit. *Id.* Plaintiff's story that he wanted to show someone the evidence simply did not make sense to Sittner. *Id.*

28. Sittner also found that there were troubling variations in Plaintiff's story. For example, in his first statement, Brathwaite told Green that the first time Verdine contacted him in any way was with the shotgun, when he shoved it towards Brathwaite. Pl. Dep., Ex. 12;

McManus Dep., Ex. 18. Yet, when Sittner interviewed Brathwaite, he said that no such contact took place. Pl. Dep., Ex. 13; McManus Dep., Ex. 18.

29.     It was also significant to Sittner that Brathwaite refused to sign the statement that Sittner took (despite the fact that Plaintiff testified at this deposition that the statement was accurate, with one small change). McManus Dep., Ex. 18; Pl. Dep., Ex. 13; Pl. Dep., 102:5-105:22.

30.     Plaintiff filed a charge with Equal Employment Opportunity Commission ("EEOC") on April 28, 2005, over a year after Vance terminated his employment. Pl. Dep. Ex. 8.

31.     Plaintiff submitted all evidence he had in support of his case to the EEOC. Pl. Dep., 37:7-10.

32.     On February 21, 2006, the EEOC dismissed the charge and found: "Based on the information obtained during the course of the investigation, the facts are not supported by the evidence. You submitted your rebuttal, which had no information to show that you were discriminated against because of his [sic] race (Black)." Pl. Dep., Ex. 9.

33.     A few months after Plaintiff was discharged, Vance also terminated the employment of two officers -- one Caucasian, one African-American -- who were found to have been fighting; one of those officers, coincidentally, was Verdine. Sittner Dep., 37:2-38:19; Brown Decl., Exhibit G.

34.     Brathwaite was replaced by an African-American, Norris Hercules, hired on April 12, 2004. Declaration of Jerry Sargent ("Sargent Decl."), ¶ 2.

        Respectfully submitted,

        **JACKSON LEWIS LLP**

| February 5, 2007 | By: _____/s/_____ |
|---|---|
| | Tyler A. Brown (D.C. Bar No. 480693) |
| | 8614 Westwood Center Drive, Suite 950 |
| | Vienna, VA 22182 |
| | (703) 821-2189 |
| | (703) 821-2267 (fax) |

        **Attorneys for Defendant Vance Federal Security Services, Inc.**

7