UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENRIQUE BRATHWAITE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:06-cv-01367-GK ) ) |
| VANCE FEDERAL SECURITY SERVICES, INC. | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Enrique Brathwaite, by counsel, states the following in opposition to Defendant's Motion for Summary Judgment:

## INTRODUCTION

Mr. Brathwaite was employed as a security officer for Defendant Vance Federal Security Services ("Vance"). On March 13, 2004, another security officer, Shawn Verdini ("Verdini"), pushed Mr. Brathwaite causing him to fall and knock over a trash can. Then Verdini spit on Mr. Brathwaite's face. Mr. Brathwaite immediately reported the incident.

Vance placed Mr. Brathwaite on suspension while it investigated the incident. On March 23, 2004, Vance terminated Mr. Brathwaite's employment. Vance did not take any disciplinary action against Verdini. Mr. Brathwaite is African-American. Verdini is white.

## **STATEMENT OF FACTS**

Mr. Brathwaite was hired by Vance as a security officer at the Walter Reed Army Medical Center in or about September 2003 (Exhibit 1, Brathwaite depo., p. 9, 12). Vance has a contract with Chenega Integrated Systems to provide security services at the access points to Walter Reed Army Medical Center (Exhibit 2, McManus depo., p. 6-7). The Army has a police force called the Department of Army Police, which is under the command of the Provost Marshal's Office. (McManus depo., p. 6-8).

Mr. Brathwaite's job duties included searching vehicles and checking identification cards (Brathwaite depo., p. 9).

Vance had Standards of Conduct that all of its employees had to abide by (Brathwaite depo., p. 14-15; Exhibit 3, Vance Standards of Conduct). Assault is listed as a violation of the Vance Standards of Conduct (Exhibit 3).

On March 13, 2004, Mr. Brathwaite was working at his post along with Officers Joseph Barnett ("Barnett"), Melvin Blassingame ("Blassingame"), William Collins ("Collins"), and Verdini. Robert Branch, another officer who was off duty that day, was also present (Brathwaite depo. 69-70).

Mr. Brathwaite and the other officers at the post were supposed to take turns carrying the shotgun. They were supposed to switch off carrying the shotgun every hour (Brathwaite depo. p. 41).

At the start of his shift on March 13, 2004, Mr. Brathwaite carried the shotgun. (Brathwaite depo. p. 41). After his hour was up, Mr. Brathwaite asked each of the other officers to take the shotgun. The other officers refused to take it from him. As a result, Mr. Brathwaite carried the shotgun for another hour (Brathwaite depo. p. 42, 45-46). At

the end of the second hour, Mr. Brathwaite gave the shotgun to Verdini (Brathwaite depo. p. 46).

After Verdini's hour was up, he asked Mr. Brathwaite to take the shotgun again (Brathwaite depo., p. 46-48). At that time, Mr. Brathwaite was checking vehicles and he could not bend down to check vehicles with the weapon on his back. He told Verdini to give it to one of the other officers (Brathwaite depo., p. 48).

Instead of giving the shotgun to another officer, Verdini threw the weapon on the ground (Brathwaite depo., p. 50). Mr. Brathwaite told Verdini, "You can't do that. What if that weapon [goes] off?" (Brathwaite depo., p. 50). Verdini raised his voice and said, "Take this F-ing weapon" (Brathwaite depo. p. 64). When Mr. Brathwaite refused, Verdini picked up the weapon, took it outside and placed it against the guard shack. Then Verdini went up the hill to smoke a cigarette (Brathwaite depo., p. 62-63).

Mr. Brathwaite told Verdini that he could not just abandon the weapon (Brathwaite depo., p. 58). When Verdini realized that Mr. Brathwaite was not going to take the weapon, he got angry. He put out his cigarette after having smoked it only half-way, came down the hill, picked up the weapon and yelled, "If you don't take this weapon I'm going to get F-ing fired today" (Brathwaite depo., p. 65-66). Then Verdini pushed Mr. Brathwaite twice with the shotgun, hitting him in the chest (Brathwaite depo., p. 68). Barnett, Blassingame, Collins and Branch saw Verdini push Mr. Brathwaite with the shotgun (Brathwaite depo., p. 71-72).

Verdini stopped pushing Brathwaite with the shotgun and Mr. Brathwaite returned to his duties. Then Verdine came back without the shotgun and began pushing Mr. Brathwaite again (Brathwaite depo., p.73). Verdini pushed Mr. Brathwaite twice

using both of his hands. The second push caused Mr. Brathwaite to knock over a trash can and fall to the ground (Brathwaite depo., p. 74-75). When Verdini saw that Mr. Brathwaite was not going to fight him, Verdini spit on Mr. Brathwaite's face twice (Brathwaite depo., p. 75-77). Barnett, Blassingame, Collins and Branch saw Verdini push Brathwaite and spit on his face (Brathwaite depo., p. 77-78).

There were cameras located in the back of the guard shack, in front of the guard shack and to the side of the guard shack. The cameras were monitoring the area around the guard shack and should have recorded the incident between Mr. Brathwaite and Verdine (Brathwaite depo., p. 118).

Mr. Brathwaite immediately went to the Provost Marshal's Office to find his supervisors, Lieutenant Charles Green ("Green") and Lieutenant Gloria Williams ("Williams") (Brathwaite depo., p. 80-81). It took him about a minute and a half to get there (Brathwaite depo., p. 83). When he arrived at the Provost Marshal's Office, Mr. Brathwaite still had the gob of spit on his face (Brathwaite depo., p. 83). He showed the spit to Officer Hayes ("Hayes"), a Provost Marshal police officer and told him he had been assaulted by a fellow officer (Brathwaite depo., p. 81-82). Hayes told Mr. Brathwaite to wipe the spit off his face because he had seen the evidence (Brathwaite depo., p. 82, 86).

Green and Williams arrived and took a statement from Mr. Brathwaite (Brathwaite depo., p. 86). They also took statements from Blassingame, Barnett and Verdine. Green and Williams each wrote a report. They recommended that Vance discipline both Brathwaite and Verdini (Exhibit 4, Sittner depo., p. 29).

Green's report states, "What I have heard Mr. Brathwaite and Mr. Verdine were both wrong. Ones punishment should be no more than the other" (Exhibit 5, Green's report).

Williams' report states, "At a minimum, each officer should be suspended for a lengthy period" (Exhibit 6, Williams' report).

Thomas Sittner ("Sittner"), Project Manager and Chief of Guards, learned about the incident during a telephone call from Green on March 13, 2004. (Sittner depo., p.13). Sittner directed Green to take statements from all the parties involved and the witnesses. (Sittner depo., p. 13).

Sittner interviewed Mr. Brathwaite on March 19, 2004 (Brathwaite depo., p. 100). Mr. Brathwaite explained what happened and Sittner took notes (Brathwaite depo., p. 102). Sittner asked Mr. Brathwaite to sign the notes but Mr. Brathwaite refused because he believed that Sittner was twisting his words and taking sides (Brathwaite depo., p. 102, 106).

Sittner interviewed Barnett and Blassingame. Both Barnett and Blassingame told Sittner that Verdine pushed Mr. Brathwaite and Sittner does not dispute that Verdine pushed Brathwaite (Sittner depo., p. 28). Sittner also spoke to Hayes and Officer Belcher ("Belcher") in the Provost Marshall's office (Sittner depo., p. 21). Sittner recalls Belcher telling him that when Mr. Brathwaite came into the Provost Marshall's Office he had "a liquid" on his face (Sittner depo., p. 22-23).

Sittner also interviewed Verdine. Verdine admitted to Sittner that he pushed Mr. Brathwaite causing him to trip over the trash can and fall to the ground (Exhibit 7, Verdini's statement).

5

Sittner concluded that Mr. Brathwaite was not telling the truth about the incident with Verdini. Sittner said he reached this conclusion because he had difficulty believing that anyone would walk around with someone else's spit on their face (Sittner depo., p. 23).

Sittner placed Mr. Brathwaite on suspension on March 19, 2004 after Sittner finished his investigation (Brathwaite depo., p. 110; Sittner depo., p. 18). He did not suspend Verdine (Sittner depo., p.31-32).

Sittner recommended to his boss, Timothy McManus ("McManus") that Vance fire Mr. Brathwaite. McManus is the program manager for Vance for the army contract. McManus did not investigate this incident nor did he speak to anyone about this incident other than Sittner (McManus p. 23). McManus was aware that the investigation disclosed that Verdine pushed Brathwaite (McManus depo., p. 21).

Vance fired Mr. Brathwaite on March 23, 2004 (Brathwaite depo., p. 114). The only reason Vance fired Mr. Brathwaite was because of the incident with Verdini (Sittner depo., p. 43; McManus depo., p. 25). Vance's termination memorandum to Mr. Brathwaite dated March 23, 2004, states that Vance is terminating Mr. Brathwaite because of an assault committed by him while on duty (Exhibit 8, Termination memorandum. Vance did not take any disciplinary actions against Verdine. He was not suspended, he did not receive a written reprimand, he did not receive verbal counseling, and he was not terminated (Sittner depo., p. 31-32).

Shortly after the incident between Mr. Brathwaite and Verdine, Vance terminated Verdine's employment because of an altercation he had with another officer. Neither

Sittner nor McManus were involved in the investigation of that incident or in Vance's decision to terminate Verdine (Sittner depo., p. 38; McManus depo., p. 28-29).

Mr. Brathwaite is currently on active duty with the United States Army. He has been in the military since 1977. In 2005, he was promoted to Sergeant First Class (Brathwaite depo., p. 143, 152).

## LEGAL ARGUMENT

I. **Introduction**

Summary judgment should be denied. Mr. Brathwaite has a prima facie case of race discrimination. Vance's reasons for terminating him were false and pretext to mask unlawful discrimination. Mr. Brathwaite's Title VII claim is not barred by the statute of limitations. Mr. Brathwaite has a cause of action for termination in violation of public policy.

II. **Summary Judgment Standard**

Summary judgment may be granted only if "there is no genuine issue as to any material fact [and] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (Id. at 248). In deciding a motion for summary judgment, the court must view the facts and the reasonable inferences from the facts "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[I]f reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51

### III. Mr. Brathwaite has a Prima Facie Case of Race Discrimination

Mr. Brathwaite has asserted claims under Title VII and 42 U.S.C. § 1981. Courts analyze claims brought under both of these statutes by conducting the three step, burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000) (Section 1981 claims are reviewed under the burden shifting scheme of *McDonnell Douglas*). Under the *McDonnell Douglas* burden shifting analysis, the initial burden is on the plaintiff to establish a *prima facie* case of discrimination. 411 U.S. at 802. The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its challenged action. *Id.* If the defendant is successful, the plaintiff must then prove, by a preponderance of the evidence, that the legitimate, nondiscriminatory reason articulated by the defendant is merely pretext for discrimination. *Id.* at 804.

Vance states that in order to establish a prima facie case of discriminatory discharge Mr. Brathwaite must show

> (1) that [he] belongs to a protected class, (2) that [he] performed at or near the level legitimately expected by [his] employer, (3) that [he] was discharged, and (4) that [he] was replaced by a person outside the protected class or that similarly situated individuals outside the protected class were retained.

Vance's brief at p. 10 citing *Park v. Washington Metro. Area Transit Auth.*, 892 F. Supp. 5, 10 (D.D.C. 1995) *aff'd*, 107 F.3d 924 (D.C. Cir 1996).

However, as explained in one of the cases cited by Vance and attached as Exhibit H to its brief, these elements are "flexible and must be adapted to the case at hand." *Plummer v. Safeway, Inc.*, 1995 U.S. Dist. Lexis 3428 *5-6, No. 93-0316 (PLF) (D.D.C.

March 17, 1995) (citing Harding v. Gray, 9 F3d 150, 152 (D.C. Cir. 1993). Indeed the United States Supreme Court, in discussing the elements of a prima facie case, stated:

> The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, n. 13.

**A.    For the purposes of establishing a prima facie case, Mr. Brathwaite met Vance's legitimate work expectations.**

Vance claims that Mr. Brathwaite did not meet Vance's legitimate work expectations because he "received three written warnings in a span of only three months, then was found to have instigated a fight with a co-worker." Vance's brief at p. 11-12. First, the only reason that Vance terminated Mr. Brathwaite was the incident with Verdine. There is no indication that Vance was contemplating any employment action against Mr. Brathwaite based on the written warnings.

Second, the court should not consider Vance's reason for discharge in assessing whether Mr. Brathwaite has established a prima facie case. *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1119 (10th Cir. 1991). In *Toone v. Federal Express Corp.*, 1997 U.S. Dist. Lexis 11637, No. 96-2450 (RCL) (D.D.C. July 30, 1997) (Exhibit 9), the court explained:

> When ruling on a summary judgment motion . . .the court must be careful not to focus prematurely on the defendant's articulated reason for the termination. . . .Short-circuiting the analysis of the defendant's articulated reason at the *prima facie* stage frustrates a plaintiff's ability to establish that this reason was a pretext for discrimination; if a plaintiff's failure to overcome the reasons offered by the defendant for discharge defeats the plaintiff's prima facie case, the court is then not required to consider plaintiff's evidence on this critical issue.
>
> For example, even though it is undisputed that the plaintiff committed

9

> misconduct and that FedEx legitimately could expect him not to engage in such conduct, *a jury still could find him to be a victim of race discrimination if FedEx has not fired, or would not fire, similarly-situated non-Blacks*. Dismissing the plaintiff's case because he was not qualified, therefore, would evade examination of the central question in this case -- but for the plaintiff's race, would he have been fired, as opposed to subjected to some milder form of discipline?

*Id.* at *10-11 (citations omitted) (emphasis supplied). Thus, the fact that Vance claims that Mr. Brathwaite instigated a fight with Verdine does not defeat Mr. Brathwaite's prima facie case of discrimination.

**B.   Mr. Brathwaite may establish a prima facie case of discrimination even if Vance hired another African-American to replace him.**

Vance contends that Mr. Brathwaite does not have a prima facie case of discrimination because he was replaced by an African-American. However, even if Vance replaced Brathwaite with another African-American, that does not defeat Mr. Brathwaite's prima facie case of discrimination.

In *Phillips v. Holladay Property Services*, 937 F. Supp. 32, (D.D.C. 1996), which involved facts similar to Mr. Brathwaite's case, this court explained that the plaintiff's replacement by an African-American did not necessarily preclude her from establishing a prima facie case as long as she came forward with evidence showing that "'a comparable non-protected person was treated better,' i.e. that non-Blacks were not terminated for the same or similar conduct." 937 F. Supp. at 34-35 (*quoting Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). See *EEOC v. Brown &. Root, Inc.*, 688 F.2d 338, 340 (5th Cir. 1982) ("If an employee is discharged under circumstances in which an employee of another sex would not have been discharged, an inference of discrimination arises irrespective of the gender of the employee's replacement").

10

### C.   Vance treated Verdine better than it treated Mr. Brathwaite.

The facts show that Verdine pushed Mr. Brathwaite causing him to knock over a trash can. Barnett, Blassingame and even Verdine admit this and told these facts to Sittner. In addition, Hayes and Belcher told Sittner that they saw a "liquid" on Mr. Brathwaite's face when he arrived at the Provost Marshal's Office. Thus, despite the fact that Verdine assaulted Mr. Brathwaite at least once, Vance took no disciplinary actions against him. Vance did not suspend Verdine. Vance did not issue him a written reprimand. Vance did not even verbally counsel him as a result of the incident. By contrast, Vance terminated Mr. Brathwaite's employment.

Vance discharged Mr. Brathwaite for pushing Verdine because Mr. Brathwaite violated Vance's standards of conduct. The standards of conduct provide that an assault can lead to any form of discipline including termination (Exhibit 3). Even assuming that Mr. Brathwaite pushed Verdine, Vance seems to forget that Verdine pushed Mr. Brathwaite and thus, also violated Vance's standards of conduct. There is nothing in the statements from Verdine, Barnett, or Blassingame that indicates that Verdine pushed Mr. Brathwaite in self-defense. Verdine could have walked away from Mr. Brathwaite.

Verdine's supervisors, who conducted the initial investigation, recommended to Sittner that Verdine be punished. Despite that recommendation and the clear evidence that Verdine violated Vance's standards of conduct, Vance took no disciplinary action against Verdine. Because Vance treated Verdine, who is white, so differently from how it treated Mr. Brathwaite, an African-American, for the same offense, there is an inference of discrimination in this case.

Vance's claim that it does not treat whites better than African-Americans because it fired Verdine for assault a few months later should be rejected. Sittner and McManus were not involved with the investigation of this other incident or Vance's decision to terminate Verdine. Thus, the second incident involving Verdini is distinguishable and cannot be used by Vance as proof that it treats African-American employees the same as it treats white employees.

By contrast, Mr. Brathwaite may use Vance's disparate treatment of Verdine in his case because all of the relevant aspects of Mr. Brathwaite's employment situation were the same as Verdine's. *Neuren v. Adduci, Mastiami, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). Mr. Brathwaite and Verdine were involved in the same incident with the same people in charge of investigating the incident (Green, Williams, Sittner), the same person in charge of recommending disciplinary action (Sittner) and the same person in charge of issuing the disciplinary action (McManus).

### IV.   Defendant's Reasons for Terminating Plaintiff Were False and Pretext to Mask Unlawful Discrimination.

The plaintiff can establish pretext in one of two ways. He can show that a discriminatory reason more likely motivated the defendant, or he can show that the defendant's proffered explanation is unworthy of credence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Essentially, the fact finder must be persuaded by the plaintiff that the defendant's articulated reason was false and that its real reason was discriminatory. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). A plaintiff's prima facie case, coupled with probative evidence "that the employer's explanation is false," would counsel against granting the employer summary

judgment unless the employer presented other strong evidence from which "no reasonable factfinder could conclude" that there was discrimination. *Price v. Thompson*, 380 F.3d 209, 214 (4th Cir. 2004) quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 149 (2000).

In this case, Vance's reasons for terminating Mr. Brathwaite are unworthy of credence. Vance failed to take any disciplinary action against Verdine. If the penalty for assault was termination, Vance should have terminated Verdine as well. The fact that Vance did not discipline Verdine at all shows that its action against Mr. Brathwaite was discriminatory.

Vance's decision to terminate Verdine for assault a few months later does not prove there was no pretext. As explained above, Sittner and McManus were not involved with the investigation of this other incident or Vance's decision to terminate Verdine. Thus, the second incident involving Verdini is distinguishable and cannot be used by Vance to establish that there was no pretext.

V.   **Mr. Brathwaite's Title VII Claim is not Barred by the Statute of Limiatations.**

Vance claims that Mr. Brathwaite's Title VII claim is barred by the statute of limitations because his charge is date stamped April 28, 2005. Attached as Exhibit 10, are documents showing that Mr. Brathwaite filed his charge by September 11, 2004. Mr. Brathwaite initially filed his charge with the Equal Employment Opportunity Commission's Washington Field Office. The EEOC transferred his case to Baltimore, Maryland. Then the EEOC transferred his case back to the Washington Field Office. Thus, Mr. Brathwaite's Title VII claim is timely.

VII.  **Mr. Brathwaite has a Cause of Action for Termination in Violation of Public Policy.**

District of Columbia courts recognize a public policy exception to the employment-at-will doctrine. In order to state a claim for wrongful discharge in violation of public policy, an employee must allege that (1) he engaged in a protected activity (reported matters of public concern); (2) the employer took an adverse employment action against him; (3) the employee's conduct was the sole reason for his termination. *Owens v. National Medical Care, Inc.*, 337 F. Supp. 2d 131, 137 (D.D.C. 2004). An employee can bring a wrongful discharge claim under the public policy exception if he is terminated for reporting a coworker's illegal conduct. *Washington v. Guest Services*, 718 A.2d 1071, 1072 (D.C. 1998).

In this case, Vance suspended Mr. Brathwaite and then fired him after he reported Mr. Verdine's unlawful conduct. Therefore, Mr. Brathwaite has a claim for termination under D.C.'s public policy exception.

## CONCLUSION

For the foregoing reasons, Vance's motion for summary judgment should be denied.

Respectfully submitted,

_____/s/_____
Alan Lescht, Bar No. 441691
Susan L. Kruger, Bar No. 414566
Alan Lescht & Associates, P.C.
1050 17th St., N.W. Suite 220
Washington, D.C. 20036
(202) 463-6036
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENRIQUE BRATHWAITE,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>VANCE FEDERAL SECURITY<br>SERVICES, INC.<br><br>　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)　Case No. 1:06-cv-01367-GK<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's opposition and the entire record herein, it is hereby ORDERED that the Defendant's Motion for Summary Judgment is DENIED.

　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　Gladys Kessler
　　　　　　　　　　　　　　　　　USDJ