Ex 2

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - -x

ENRIQUE BRATHWAITE,                       :

      Plaintiff,                         :

  vs.                                     : Case No.

VANCE FEDERAL SECURITY SERVICES,          : 2006-CA-003877B

INC., :                                   :

      Defendants                         :

- - - - - - - - - - - - - - - - - -x


    Deposition of IAN TIMOTHY MCMANUS, held at the offices of Jackson Lewis, LLP, 8614 Westwood Center Drive, Suite 950, Vienna, Virginia, commencing at 12:58 p.m., Monday, November 27, 2006, before Elizabeth Mingione, Notary Public.

CERTIFIED
COPY

HENDERSON LEGAL SERVICES

1015 15th Street, Suite 525

Washington, D.C. 20005

McManus, Ian Timothy                                     November 27, 2006
                              Vienna, VA

                                                                        6

1    Vance.

2        Q.    Okay.  And what is your position there?

3        A.    Today?

4        Q.    Today.

5        A.    I'm the program manager for Vance for the

6    Army contract.  And I am a senior managing director

7    for Vance Uniform.

8        Q.    For Vance -- I'm sorry?

9        A.    Uniform Protective Services, two branches.

10       Q.    And did you hold these positions when

11   Mr. Brathwaite was working for Vance?

12       A.    Not the latter.  The former I did.

13       Q.    Okay.  Did you have any other positions at

14   the time that Mr. Brathwaite was working for Vance?

15       A.    I did not.

16       Q.    Now, what facility was it that

17   Mr. Brathwaite worked at?

18       A.    As I understand it, Walter Reed Army

19   Medical Center.

20       Q.    And did Vance have a contract with Walter

21   Reed?

22       A.    We do not.

McManus, Ian Timothy November 27, 2006
Vienna, VA

7

```
 1      Q.   Who did Vance have a contract with?
 2      A.   We have a contract with Chenega Integrated
 3  Systems.  They are the prime contractor.
 4                        - - -
 5              (Discussion off the Record)
 6                        - - -
 7           BY MS. KRUGER:
 8      Q.   So you were saying that the prime
 9  contractor was Chenega Integrated Systems?
10      A.   Yes.
11      Q.   Okay.  And who are the provost marshal
12  officers?
13      A.   Officers like human beings?
14      Q.   Where is there a provost marshal office?
15      A.   Yeah, first of all, I'll give you the best
16  to my knowledge.
17      Q.   Okay.
18      A.   The Army has a police force called the
19  Department of the Army Police.  They fall, I believe
20  under the command of the provost marshal.  The provost
21  marshal as you may know is a military organization.
22  But I believe that the Department of the Army Police
```

McManus, Ian Timothy                                    November 27, 2006
                            Vienna, VA

                                                                        8

```
1    fall under the provost marshal's office.
2         Q.   Okay.  And so what was the relationship
3    between the Vance employees and the provost marshal
4    officers?
5         A.   Very limited.  There was -- they reside in
6    the same location relative to the arms area, what have
7    you.  But as far as a professional relationship, there
8    is none other than the Chief of Guards who at that
9    time I believe was Mr. Sittner, with the what is
10   called the COTR, the contracting officer technical
11   representative.  That is an employee of the
12   government.
13        Q.   And what did you say Mr. Sittner was again?
14   I'm sorry.
15        A.   His title is the Chief of Guards.
16        Q.   So did he have some sort of relationship
17   with them?  I didn't understand what you were saying.
18        A.   The relationship -- maybe it's easier if I
19   do it this way.  When Chenega received the contract
20   from the Army and then Vance was brought in, Walter
21   Reed was given to Vance to support their operation.
22        Q.   Okay.
```

McManus, Ian Timothy                                November 27, 2006
Vienna, VA

21

1           THE WITNESS: Okay. I'm sorry.
2           BY MS. KRUGER:
3       Q.  All right. Well, let's even go back to the
4   first question. Regarding whether or not Mr. Verdine
5   had pushed Mr. Brathwaite, do you know if Mr. Sittner
6   concluded that Mr. Verdine had in fact pushed
7   Mr. Brathwaite as a result of his investigation?
8       A.  **As part of the conversation?**
9       Q.  Did he talk to you about that, about what
10  he believed happened?
11      A.  **I don't recall the specificity of the**
12  **conversation other than what was -- what we had gone**
13  **through the document together.**
14      Q.  All right. And so you saw in the document
15  that there were allegations by in fact more than, you
16  know, more than a couple of people that -- people
17  besides Mr. Brathwaite that Mr. Verdine had in fact
18  pushed Mr. Brathwaite?
19      A.  Yes.
20      Q.  Okay. And now in looking at page 3 of this
21  document, do you see there's an allegation that
22  Mr. Verdine had spit on Mr. Brathwaite?

Henderson Legal Services, Inc.
(202) 220-4158

McManus, Ian Timothy                                    November 27, 2006
                         Vienna, VA

                                                                        23

1    the spitting?

2        A.    I recall going through the document with

3    him, madame.

4        Q.    Okay.  Now, you didn't personally interview

5    Mr. Brathwaite?

6        A.    I did not.

7        Q.    And you didn't talk to Mr. Verdine?

8        A.    I did not.

9        Q.    And you didn't talk to Mr. Blassingame?

10   I'm not sure I'm pronouncing that right.

11       A.    No.  I don't recall speaking to anyone

12   specifically outside of Mr. Sittner regarding this

13   particular matter.

14       Q.    Okay.  Have there been any other instances

15   where employees have gotten into fights?

16       A.    At Walter Reed specifically, madame, or

17   elsewhere, or in my 18 years, or --

18       Q.    Well, let's talk about --

19       A.    I'm not being smart.  I just don't know how

20   your question --

21       Q.    Well, let's start with Walter Reed.  And

22   let's talk about security officers.  Do you know of

                                                                    25

1      Q.   Do you remember whether anyone was
2  terminated as a result of the fights?
3      A.   **Not specifically.  Although that is clearly**
4  **an option.**
5      Q.   Right.  I understand that.
6      A.   **Termination is absolutely an option.**
7      Q.   But you don't remember in any of these
8  cases that you are thinking of whether anyone was
9  terminated?
10     A.   **No.  I don't know.**
11     Q.   Okay.  You didn't view the -- you didn't
12 view the videotape from the cameras?
13     A.   **I did not.**
14     Q.   Okay.  Do you know anything, I am not sure
15 if I asked you this before, do you know anything about
16 Mr. Verdine's job performance?
17     A.   **I do not.**
18     Q.   Okay.  And what was the reason why
19 Mr. Brathwaite was fired?
20     A.   **Well, as I wrote on the back here,**
21 **basically assaulting another security officer, based**
22 **on the investigation.**

McManus, Ian Timothy                                    November 27, 2006
                          Vienna, VA

```
                                                                   28
 1              MS. KRUGER:  Okay.  If you could show him
 2    this document.  And if you could mark that as Exhibit
 3    19.
 4                           - - -
 5              (A document was marked as Deposition
 6    Exhibit Number 19)
 7                           - - -
 8              BY MS. KRUGER:
 9        Q.    Have you ever seen this document before?
10        A.    I have not.
11        Q.    Okay.  Do you know whose handwriting is on
12    this document?
13        A.    I do not.
14        Q.    Okay.
15        A.    It surely is not mine.  I can read it.
16        Q.    Okay.  Did you ever read over any of the
17    statements that Mr. Sittner obtained from
18    Mr. Brathwaite and Mr. Verdine or any of the other
19    witnesses?
20        A.    I can't say for sure either way.  I don't
21    believe I did.
22        Q.    Okay.  Now, Mr. Verdine was terminated at
```

Henderson Legal Services, Inc.
(202) 220-4158

                                                                    29

1   some point from his employment?

2       A.   He may have been.

3       Q.   Okay.  You don't have any knowledge of
4   that?

5       A.   No, ma'am.

6       Q.   Okay.

7       A.   Well, that's not exactly true.  I had a
8   conversation with Mr. Jackson, Friday, who had told me
9   that the gentleman had been terminated, or asked me --

10          MR. BROWN:  Okay.  You are not supposed to
11  tell anything that you and I talked about.

12          THE WITNESS:  Oh, I'm sorry.  Okay.  I just
13  became aware of that on Friday.

14          MS. KRUGER:  Okay.  All right.  I don't
15  have any further questions.

16          MR. BROWN:  Thank you.  No questions.  He
17  will read.

18                       -  -  -

19      (The deposition was concluded at 1:33 p.m.)
20                       -  -  -

21

22