Ex 9

8 of 100 DOCUMENTS

VICTOR M. TOONE, Plaintiff, v. FEDERAL EXPRESS CORPORATION, Defendant.

Civil Action No. 96-2450 (RCL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*1997 U.S. Dist. LEXIS 11637*

July 30, 1997, Decided
July 30, 1997, FILED

**DISPOSITION:** [*1] Defendant's motion for summary judgment GRANTED; plaintiff's motion to compel responses to request for admissions DENIED and plaintiff's motion for order prohibiting defendant from interfering with witness interviews DENIED.

**COUNSEL:** For PLAINTIFF: WILLIAM H. BRIGGS, JR., MICHAEL D. ROTHBERG, ROSS, DIXON MASBECK, L.L.P., WASHINGTON, D.C.

For DEFENDANT: R. MARK DARE (Admitted pro hoc vice), MERRELL B. RENAUD, HAZEL & THOMAS P.C., FALLS CHURCH, VA. COLBY S. MORGAN, JR. (ADMITTED pro hoc vice), Memphis, Tennessee.

**JUDGES:** ROYCE C. LAMBERTH, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROYCE C. LAMBERTH

**OPINION:**

**MEMORANDUM OPINION**

On April 4, 1997, the above-captioned case was re-assigned to the undersigned member of this Court from the late Honorable Charles R. Richey. Before the Court are the defendant's motion for summary judgment, the plaintiff's motion to compel the defendant's answers to request for admissions, and the plaintiff's motion for an order prohibiting the defendant from interfering with witness interviews. For the reasons discussed below, the defendant's summary judgment motion shall be granted, and the plaintiff's discovery motions shall be denied.

**DEFENDANT'S MOTION FOR SUMMARY [*2] JUDGMENT**

**I.**

**Introduction**

The plaintiff, a former Operations Manager for a Federal Express Station in the District of Columbia, has sued Federal Express for race discrimination under Title VII and *42 U.S.C. § 1981;* the plaintiff is Black. He also has brought a common law claim for breach of employment contract. The defendant has moved for summary judgment on all of the plaintiff's claims pursuant to *Rule 56 of the Federal Rules of Civil Procedure.*

**II.**

**Relevant Facts n1**

   n1 The facts below are either undisputed or have been assumed true in the plaintiff's favor solely for purposes of this motion.

The plaintiff was employed by Federal Express ("FedEx") from October 1984 to April 1995. In 1991, the plaintiff became Operations Manager at a FedEx site in the Capital District. On April 27, 1994, while coordinating the morning sort of FedEx packages, the plaintiff said in reference to, and in the presence of, a subordinate, "I hate a drunk dike bitch." *Deposition of Victor M. Toone* [*3] *("Toone Dep.")* at 127:11.

Case 1:06-cv-01367-GK    Document 12-12    Filed 03/02/2007    Page 3 of 10

1997 U.S. Dist. LEXIS 11637, *3                                                                 Page 2

In response, on July 21, 1994, Senior Manager Roger W. Brown, issued the plaintiff a warning letter that stated, in part,

> "There is no excuse for anyone especially a manager in this Corporation to refer to another employee as you referenced [the subordinate] ... THIS TYPE OF ACTION WILL NOT BE TOLERATED. Further occurrences of this nature will result in more stringent disciplinary action up to and including removal from your management position." *Exh. 5 to Toone Dep.* (emphasis in original).

In October 1994, only three months after receiving this warning letter, the plaintiff submitted a verification of employment ("VOE") form to his mortgage lender without his supervisor's signature, even though he knew FedEx required such a signature. *Plaintiff's 108(h) Statement* at P 31. Instead, the plaintiff signed the form with the name of a non-management employee, Adrienne Hall, without that employee's prior authorization. *Id.; Deposition of Adrienne Hall* at 68-69.

The plaintiff argues that his forgery of a non-management employee's signature on the VOE form was excusable, because at the time, (1) there were "only days remaining before [*4] settlement," (2) he feared "the consequences of failing to obtain a loan prior to settlement," and (3) he was "unsure as to whether he could obtain [his supervisor's] immediate signature on the VOE form." *Plaintiff's 108(h) Statement* at PP 28-31.

In April 1995, the plaintiff's mortgage lender sent a copy of the completed VOE form back to FedEx, whereupon the plaintiff's supervisor, Naomi Powell, discovered Hall's signature. *Defendant's 108(h) Statement* at PP 27-29. Powell began an investigation, because she knew that Hall was not a manager, and only managers may sign VOE forms. *Id.* at P 33. After Hall told Powell that it was not her signature on the VOE form, Powell spoke with the plaintiff who then admitted that he had signed Hall's name to the VOE form. *Id.* at P 34; Plaintiff's *108(h) Statement* at PP 48-49.

On April 10, 1995, Powell spoke with Pat Washington, the station personnel representative, about the appropriate form of discipline for the plaintiff. *Defendant's 108(h) Statement* at P 40. They talked about whether the discipline should take the form of a warning letter, termination, an investigative suspension, and/or a demotion/transfer to another [*5] location. *Id.; Plaintiff's 108(h) Statement* at P 59.

On April 11, 1995, Powell suspended the plaintiff for three days, pending further investigation of his "gross leadership failure." *Defendant's 108(h) Statement* at P 43; *Exh. 8 to Toone Dep.* On that same day, Powell held a three-way telephone conference with John Formisano, the Managing Director of the Capital District, and Larry Southerland, the Personnel Manager. *Defendant's 108(h) Statement* at P 54. They discussed what the appropriate form of discipline should be -- a warning letter, a demotion, or a termination. *Id.* at P 56.

On April 12, 1995, Southerland and Formisano recommended to Powell that the plaintiff be terminated. *Id.* at P 66; *Plaintiff's 108(h) Statement* at P 208. n2 Powell met with the plaintiff on April 14, 1995 and informed him of his termination. *Defendant's 108(h) Statement* at P 70. She also handed the plaintiff a termination letter that stated, in part:

> "After a thorough investigation of the facts, it has been determined that there was willful falsification of the content of the employment verification form through the unauthorized use of your subordinate's (CSA) name. [*6] To sign your employee's name to a document for personal gain demonstrates a low degree of ethics and a lack of integrity ... As a manager for Federal Express, it is incumbent upon you to demonstrate the highest standard of conduct and personal integrity. Your handling of this matter puts your judgment and integrity in question. To have this happen on the heels of another incident that occurred less than a year ago is considered gross leadership failure (Warning Letter dated July 21, 1994.) In lieu of this, it has been decided to terminate your employment with Federal Express." *Id.* (citing *Exh. 9 to Toone Dep.*).

n2 Naomi Powell, Pat Washington and Larry Southerland are Black. John Formisano is white.

Case 1:06-cv-01367-GK   Document 12-12   Filed 03/02/2007   Page 4 of 10

1997 U.S. Dist. LEXIS 11637, *6       Page 3

The plaintiff appealed his termination through FedEx's Guaranteed Fair Treatment Procedure ("GFTB"). *Plaintiff's 108(h) Statement* at P 64. Formisano handled the first stage of the plaintiff's appeal, and he upheld the plaintiff's termination. *Id.* at PP 62, 65, 76. In a letter to the plaintiff [*7] dated April 26, 1995, Formisano stated, "After careful review of the facts it is my decision to uphold your Manager's decision to terminate your employment for violations of the Acceptable Conduct Policy." *Plaintiff's Ex. 24.*

The plaintiff next appealed his termination to William Schoeffield, the Vice President of the Eastern Region, who also upheld the discharge. *Plaintiff's 108(h) Statement* at PP 80, 87. The plaintiff last appealed to the FedEx Appeals Board in Memphis. *Id.* at P 90. It, too, upheld his termination. *Id.* at P 91.

## III.

### The Plaintiff's Race Discrimination Claims

A. The Plaintiff Has Established His *Prima Facie* Case of Race Discrimination under Title VII and 42 U.S.C. § 1981.

To avoid summary judgment in an employment discrimination case, the plaintiff generally must satisfy the tripartite analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and reaffirmed in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993). n3 Initially, the plaintiff must establish his *prima facie* case.

> n3 The burdens of persuasion and production for a claim under 42 U.S.C. § 1981 are the same for a claim alleging discriminatory treatment in violation of Title VII. See *Mungin v. Katten Muchin & Zavis*, 1997 U.S. App. LEXIS 16972, F.3d , , No. 96-7152, slip op. at 8 (D.C. Cir. July 8, 1997).

[*8]

To establish a *prima facie* case of racial discrimination in a wrongful termination case, the plaintiff must prove by a preponderance of the evidence "(1) membership in a protected class ... (2) performance at or near the employer's legitimate expectations, (3) discharge, and (4) replacement by a person of equal or lesser ability who is not a member of a protected class, or, alternatively, the position remains open after termination." *Neuren v. Adduci, Mastriani, Meeks & Schill*, 310 U.S. App. D.C. 82, 43 F.3d 1507, 1512 (D.C. Cir. 1995). This burden "is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

Assuming the plaintiff establishes his *prima facie* case, the second step of the tripartite analysis requires the defendant to articulate -- but not prove -- that it discharged the plaintiff "for a legitimate, nondiscriminatory reason." *Hicks*, 509 U.S. at 507 (quotation omitted).

At the third step of the analysis, the plaintiff must proffer evidence from which a rational factfinder could infer that the defendant intentionally discriminated against him because of his race. In order to meet this [*9] burden, the plaintiff must cite to "significantly probative," admissible evidence showing that the defendant's articulated reason for his discharge was a pretext for discrimination. See *Hicks*, 509 U.S. at 515-16 (holding that "pretext" means "pretext for discrimination"); *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) ("The plaintiff [opposing summary judgment] must . . . offer specific and significantly probative evidence that the employer's alleged purpose is a pretext for discrimination."). The plaintiff's evidence must create a genuine issue "*both* that the reason [offered for his termination] was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (1993). n4 The D.C. Circuit recently held that a plaintiff meets this burden "if the record indicates that the plaintiff presented sufficient evidence to cause a reasonable factfinder to find that the plaintiff had a *prima facie* case, and that the employer's proffered nondiscriminatory reasons for its actions were not credible[.]" *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, slip op. at 9 (D.C. Cir. 1997). [*10]

> n4 See also *id.* at 517-19 (holding that "*McDonnell Douglas* does *not* say ... that all the plaintiff need do is disprove the employer's asserted reason. ... It is not enough, in other words, to disbelieve the employer; the fact-finder must *believe* the plaintiff's explanation of intentional discrimination.") (emphases in

Case 1:06-cv-01367-GK   Document 12-12   Filed 03/02/2007   Page 5 of 10

1997 U.S. Dist. LEXIS 11637, *10                                    Page 4

original).

The defendant argues that the plaintiff was not meeting its legitimate expectations (i.e., that he was not "qualified") because of his two admitted acts of misconduct, and therefore the plaintiff has not established the second element of his *prima facie* case. The Court agrees that the plaintiff's misconduct was egregious and that FedEx had legitimate expectations that the plaintiff would not engage in such conduct. When ruling on a summary judgment motion, however, the Court must be careful not to focus prematurely on the defendant's articulated reason for the termination. *See MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1119 (10th Cir.* [*11] *1991)* (holding that a court should not "consider a defendant's proffered reasons for discharge in assessing the existence of a prima facie case"). Short-circuiting the analysis of the defendant's articulated reason at the *prima facie* stage frustrates a plaintiff's ability to establish that this reason was a pretext for discrimination; if a plaintiff's failure to overcome the reasons offered by the defendant for discharge defeats the plaintiff's prima facie case, the court is then not required to consider plaintiff's evidence on this critical issue.

For example, even though it is undisputed that the plaintiff committed misconduct and that FedEx legitimately could expect him not to engage in such conduct, a jury still could find him to be a victim of race discrimination if FedEx has not fired, or would not fire, similarly-situated non-Blacks. Dismissing the plaintiff's case because he was not qualified, therefore, would evade examination of the central question in this case -- but for the plaintiff's race, would he have been fired, as opposed to subjected to some milder form of discipline? Accordingly, as long as the plaintiff has produced evidence of his objective qualifications [*12] for the operations manager position, he has satisfied the "qualification" component of his *prima facie* case.

Here, the plaintiff has submitted evidence showing that he was employed by FedEx for eleven years, he earned a promotion to a management position, he received compliments from customers, he received several commendations for his work, the station which he managed performed well, he never received a negative overall performance evaluation, and he consistently received favorable performance comments from the employees he supervised. *See Plaintiff's 108(h) Statement* at PP 1-17. Thus, for purposes of his *prima facie* case, the plaintiff possessed the objective professional qualifications to hold the position of operations manager when he was terminated.

The defendant further argues that the plaintiff has not established the fourth element of his *prima facie* case because he allegedly was not replaced by a non-Black. While the plaintiff has submitted evidence showing that he was replaced by a white operations manager, Ken Clemence, the defendant counters that Clemence, who already was an operations manager, was brought over from another FedEx station, and that Clemence [*13] never was replaced at that other location which is now run autonomously. The defendant, however, has cited no authority to support the proposition that a plaintiff needs to show that his non-Black replacement also was replaced by a non-Black to make out a *prima facie* case of discrimination. Therefore, the plaintiff has established his *prima facie* case.

B. The Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for the Plaintiff's Termination.

The defendant has satisfied its burden of articulation. It has submitted evidence that the plaintiff was terminated for two instances of misconduct (so-called "leadership failures") in a twelve month period. n5 Thus, the remaining question is whether the plaintiff has proffered sufficient evidence to create a genuine issue that the articulated reason was a pretext for discrimination. He has not.

> n5 The plaintiff contends that, since he was fired, the defendant has offered different rationales for his termination. Among other things, the plaintiff points to a letter he received from Schoeffield, the FedEx the Vice President who handled the second stage of his internal appeal. Schoeffield's letter of May 11, 1995 states, in relevant part,
>
>> "Review of your case shows that you falsified your VOE request with regard to salary information and exhibited gross leadership failure by signing another employee's name on it. This is your second misconduct issue in less

Case 1:06-cv-01367-GK   Document 12-12   Filed 03/02/2007   Page 6 of 10

1997 U.S. Dist. LEXIS 11637, *13                                              Page 5

than one year, and we are in agreement with management's decision to terminate your employment with Federal Express." *Plaintiff's Exh. 27.*

The plaintiff argues that the May 11 letter shows that FedEx has changed its reasons for his discharge, because FedEx previously had not said that he was fired for falsifying salary information and has not articulated this reason since.

The plaintiff's argument mischaracterizes the undisputed facts. The plaintiff admits that he called a subordinate a "drunk dike bitch." He further admits that he forged a signature on a VOE form six months later. It is undisputed that the defendant considered both of these instances of misconduct to be "leadership failures," regardless of how accurate the plaintiff stated his salary on the VOE form. Indeed, the very evidence upon which the plaintiff relies -- Schoeffield's letter -- plainly states that the plaintiff "exhibited gross leadership failure by signing another employee's name on [the VOE form]." (emphasis added). Thus, the undisputed evidence shows that defendant consistently has maintained that it fired the plaintiff for two temporally-related leadership failures.

The fact that, at the second stage of the internal appeal process, Schoeffield (who indubitably played no role in the plaintiff's discharge) may have suggested an additional reason for the plaintiff's termination does not undermine the defendant's articulated reason of two leadership failures in one year's time. The plaintiff's disagreement with one of the reasons that may have justified his termination cannot create a genuine issue for trial, unless he can create a genuine dispute as to all of the reasons. *See Russell v. ACME-Evans Co., 51 F.3d 64, 69 (7th Cir. 1995)* ("The fact that some of [the defendant's articulated] reasons were successfully called into question by [the plaintiff's] deposition or affidavit does not defeat summary judgment if at least one reason for each of the [challenged] actions stands unquestioned."); *accord Mungin, supra,* slip op. at 15 n.3 (holding that a law firm was entitled to judgment as a matter of law, even assuming that the jury did not credit one of the firm's proffered reasons for not considering the plaintiff for partnership; plaintiff offered no evidence that would have permitted a reasonable jury to disbelieve the other proffered reason). As discussed below, the plaintiff has not created a genuine issue that he was fired for the two leadership failures.

[*14]

C. The Plaintiff Has Not Submitted Direct Evidence of Discrimination, and therefore Cannot Bypass the McDonnell Douglas Tripartite Analysis.

For a few weeks in the late 1980's, John Formisano served as the acting Managing Director of the Capital District. *Plaintiff's 108(h) Statement* at P 99. During that time, Formisano visited the FedEx station of Hugh Boggs, a white manager, and allegedly told him, "This is an awful dark place down here. Is this usual? ... This is a different atmosphere then what I'm accustomed to. We're going to need to make some changes." *Id.* at P 104-05. Formisano's use of the word "dark" allegedly referred to the racial composition (predominantly Black) of the stations.

Around the same time, Formisano allegedly visited another white manager's station (Doyal Finley's) and said to him, "You've let this place get kind of dark, haven't you? If I ever come here permanently, you will have to leave so that we can lighten this place up." *Id.* at PP 110-11. n6

n6 The plaintiff points out that Formisano "directly was involved in the decision to terminate Mr. Finley" ten days after the plaintiff was fired. *Plaintiff's 108(h) Statement* at P 114. This assertion is based on paragraph 15 of Finley's declaration which bluntly states, "Mr. Formisano was directly involved in the decision to terminate my employment." This declaration testimony is inadmissible because it lacks evidentiary foundation. Finley fails to mention how he knows Formisano was involved in his termination decision and to what extent Formisano was involved. Moreover, Finley fails to proffer any reason for his termination. Thus, assuming Formisano made the racist comment and the

veiled threat to fire Finley, there is no evidence in the record from which a reasonable factfinder could infer that Formisano acted on that threat over six years later.

[*15]

The plaintiff argues that he can bypass the three-part, *McDonnell Douglas* analysis discussed above because of this purported "direct" evidence of discrimination. The plaintiff is mistaken, however, because the tripartite analysis is bypassed only "when a plaintiff presents direct evidence of discrimination that is sufficient in itself to sustain the plaintiff's burden." BARBARA LINDEMANN AND PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 3D at 37 (1996) (emphasis added). The plaintiff has not submitted such evidence.

Although the Court assumes for purposes of this motion that Formisano participated in the decision to terminate the plaintiff, it is undisputed that Formisano made these allegedly racist comments at least six years before, and outside the context of, the plaintiff's termination. Therefore, the comments are not direct evidence, because they would not be sufficient in themselves to prove that the plaintiff was fired because of his race. *See Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989)* (O'Connor, J., concurring) (discriminatory "statements by decisionmakers unrelated to the decisional process" are not direct evidence [*16] of discrimination). Because the plaintiff has satisfied his *prima facie* case and the defendant has articulated a legitimate, nondiscriminatory reason for his discharge, the plaintiff can survive summary judgment only if he has created a genuine issue that the articulated reason was a pretext for race discrimination.

D. The Plaintiff Has Not Created a Genuine Issue that His Termination for Misconduct Was a Pretext for Discrimination, and therefore Summary Judgment is Warranted.

The plaintiff has admitted, under oath, that his direct supervisor, Powell, was not biased against him because of his race. *See Toone Dep.* 137:10-20. Instead, he claims he was fired solely because of the alleged discriminatory animus of Formisano, who participated in the termination decision. Aside from the racist comments that Formisano allegedly uttered at least six years before the plaintiff's termination, the plaintiff has proffered evidence of five white employees who purportedly were similarly-situated, but whom Formisano did not terminate. n7

n7 The plaintiff argues that additional evidence of Formisano's discriminatory animus consists of his alleged failure to provide adequate support for a so-called Minority Advisory Council (a group of FedEx employees whose goal was to promote minorities to management) and his alleged failure to hire minority managers during his tenure as director of the Bostonian district.

The plaintiff's failure-to-hire minorities allegation is based solely on hearsay and lacks foundation, and therefore is not probative of discriminatory animus. *See Plaintiff's 108(h) Statement* at P 123 (citing declaration testimony of Hugh Boggs at P 12 in which he states that unidentified members of the Minority Advisory Council "often discussed the fact that there were no Black Senior under Formisano in the Bostonian district"). Indeed, the admissible evidence on point suggests that three Black managers had been developed and promoted within the Bostonian district under Formisano's leadership. *See Formisano Dec.* at P 8.

With regard to Formisano's alleged lack of support to the Minority Advisory Council, the plaintiff cites the deposition testimony of Regina Marie Allen who testified that "to her knowledge," Formisano did not provide certain kinds of support to the Council. *See Plaintiff's 108(h) Statement* at P 124 (citing *Allen Dep.* at 44:6-13). The plaintiff, however, has laid no foundation as to Allen's identity and how she would know what kind or amount of support Formisano provided the Council. Thus, he has failed to show how this deposition testimony is probative of Formisano's alleged discriminatory animus.

[*17]

To show that he was similarly-situated, the plaintiff must "demonstrate that all of the relevant aspects of [his] employment situation were nearly identical to those of

Case 1:06-cv-01367-GK    Document 12-12    Filed 03/02/2007    Page 8 of 10

1997 U.S. Dist. LEXIS 11637, *17                                                                    Page 7

[the white employees]." *Neuren v. Adduci, Mastriani, Meeks & Schill, 310 U.S. App. D.C. 82, 43 F.3d 1507, 1514 (D.C. Cir. 1995)* (internal quotation omitted). As discussed below, none of these employees meet this "nearly identical" standard, and therefore summary judgment for the defendant is warranted.

The plaintiff first points to Leslie Frye, a white customer service agent. She allegedly submitted a VOE form that listed her salary as double what it actually was and contained the unauthorized signature of her supervisor. She was not terminated.

Frye's situation is distinguishable from the plaintiff's, because (1) she was not a manager n8 and (2) aside from the plaintiff's speculation, there is no evidence in the record that Formisano was involved in the investigation or decision-making process regarding Frye. n9

> n8 The plaintiff argues that the manager-non-manager distinction is irrelevant, because the Acceptable Conduct Policy, pursuant to which he was terminated, explicitly applies to "all Federal Express employees." But just because FedEx's rules apply to all employees, it does not follow that FedEx must treat a manager's violation of those rules as it would a non-manager's violation. Indeed, at deposition, the plaintiff conceded that the conduct of a FedEx manager is held to a higher standard than the conduct of non-management employees. *See Toone Dep.* at 129:5-9. While the plaintiff may feel it is unfair to subject managers to greater scrutiny under the Acceptable Conduct Policy, his disagreement with the wisdom of that unwritten policy does not create a genuine issue for trial.

[*18]

> n9 The plaintiff has proffered evidence that Formisano was copied on some correspondence regarding Frye. *Plaintiff's 108(h) Statement* at PP 146, 150. This fact does not create a genuine issue that Formisano actually dealt with Frye, especially in light of Formisano's unequivocal denial of participation. *See Formisano Dec.* at P 10.

The plaintiff next points to Greg Thomas, a white manager at a station in Hagerstown, Maryland. The plaintiff claims that Thomas falsified courier time cards in order to create the illusion of increased productivity in the delivery of packages. He further claims that Formisano did not discipline Thomas, even though he put a stop to Thomas' time card practice.

Thomas' situation is distinguishable, because his time card practice was a one-time incident, unlike the plaintiff's two, temporally-related instances of misconduct; thus, their situations are not "nearly identical." Moreover, the plaintiff's claim that Thomas was not disciplined for the time card practice is not supported by the record. The deposition testimony the plaintiff cites in support of this assertion [*19] (*Formisano Dep.* at 105:14 to 106:2) references only the contents of Thomas's personnel file, not whether he was disciplined for allegedly falsifying time cards.

The plaintiff next cites to Ben Kincade, a white operations manager in the Capital District. According to the plaintiff, Kincade was warned on separate occasions about altering an employee's time card, viewing personal and confidential information on the FedEx computer system, manipulating time card coding, falsifying information related to the delivery of packages, and violating the sexual harassment policy. *Plaintiff's 108(h) Statement* at PP 185-87, 189. Kincade, however, was permitted to demote to a courier position. *Id.* at P 188.

Kincade's situation is distinguishable, because it is undisputed that Formisano did not participate in the issuance of any of the warning letters to Kincade or in Kincade's demotion. *See Formisano Dec.* at P 14. n10 Thus, the plaintiff and Kincade are not similarly-situated.

> n10 While the plaintiff points out that Formisano was copied on two of the warning letters (*see Plaintiff's 108(h) Statement* at PP 191-92), he has not created a genuine issue that Formisano participated in the discipline of Kincade, let alone, that he was even aware of Kincade's misconduct.

[*20]

The plaintiff next refers the Court to Steve Rossman, a white operations manager, who was accused by his employees of altering their computerized evaluation of

Case 1:06-cv-01367-GK   Document 12-12   Filed 03/02/2007   Page 9 of 10

1997 U.S. Dist. LEXIS 11637, *20                                     Page 8

his performance. *Plaintiff's 108(h) Statement* at PP 165-67. The plaintiff claims that Formisano allowed Rossman to continue working during the investigation of this accusation, instead of suspending him, and that Rossman was not terminated until a Black manager replaced Formisano as the Managing Director of the Capital District.

Rossman's situation is distinguishable, because he committed only one instance of misconduct, unlike the plaintiff's two. Moreover, assuming *arguendo* that Rossman and the plaintiff were similarly-situated, Rossman was terminated, just like the plaintiff; he simply was re-assigned to another station for a short time, pending an investigation into his conduct. Additionally, the defendant has submitted undisputed evidence that Formisano concurred with Rossman's manager's termination decision. *See Formisano Dec.* at P 12. While Formisano did not effect Rossman's termination because it took place after Formisano was replaced as Managing Director for the Capital District, his undisputed concurrence [*21] in the termination decision shows that he treated Rossman and the plaintiff similarly.

Finally, the plaintiff points to Steve Mosedale, a white operations manager, who allegedly engaged in three incidents of leadership failure within a three month period, but who was not terminated. These three incidents, however, occurred in 1993, over a year before Formisano became Managing Director of the Capital District. *Plaintiff's 108(h) Statement* at PP 176-79; *Defendant's 108(h) Statement* at P 9. Thus, Mosedale and the plaintiff were not in "nearly identical" situations.

Because the plaintiff has submitted inadequate comparative evidence of discrimination, his entire lawsuit hinges upon Formisano's allegedly racist comments which occurred at least six years prior to the plaintiff's termination and which were not causally-related to the termination. Without more, this evidence would not be sufficient to discredit FedEx's proffered reason for his termination in the mind of a reasonable factfinder. Accordingly, the defendant is entitled to summary judgment on the plaintiff's Title VII and § 1981 claims.

IV.

**The Plaintiff's Breach of Contract Claim**

In his opposition, [*22] the plaintiff indicated that he does not oppose the defendant's motion for summary judgment on his breach of contract claim, so long as he receives certain documents from the defendant. *See Plaintiff's Opposition* at pp. 11-12, n.7, 33, n.19. To date, the plaintiff has not filed a motion to compel production of any documents, and the time for filing discovery motions has long since passed. Thus, the plaintiff has abandoned his breach of contract claim, and summary judgment on that claim is appropriate.

V.

**Conclusion**

For all the foregoing reasons, the defendant's motion for summary judgment is granted.

**PLAINTIFF'S MOTION TO COMPEL RESPONSES TO REQUEST FOR ADMISSIONS**

According to Judge Richey's initial scheduling order of December 6, 1996, all discovery was to be completed by February 19, 1997. The plaintiff served (by mail) a set of request for admissions on February 19. The defendant objected to the request based on its interpretation of the scheduling order as requiring discovery to be completed by February 19, which includes the 30-day time period they would have to respond to the request for admissions.

While the plaintiff argues that the defendant's interpretation [*23] of the scheduling order is "unreasonable," if the Court were to adopt the plaintiff's interpretation, then the defendant could have responded to the request for admissions on the day of the original trial date (March 24). Moreover, if a discovery dispute had arisen as to the adequacy of the defendant's responses, there would have been no time for the parties to resolve the dispute prior to trial. Thus, the plaintiff's interpretation of Judge Richey's scheduling order is unreasonable.

The plaintiff waited until the eleventh hour to serve discovery which could not be completed prior to discovery cut-off. He never filed a motion to extend the discovery cut-off date or a motion to shorten the time for the defendant to respond to the request for admissions. Therefore, his motion to compel must be denied.

Additionally, the plaintiff has not argued that the defendant's failure to respond to his request for admissions interfered with his ability to oppose the defendant's summary judgment motion. Thus, because

Case 1:06-cv-01367-GK   Document 12-12   Filed 03/02/2007   Page 10 of 10

1997 U.S. Dist. LEXIS 11637, *23                                                                    Page 9

the Court has granted the defendant's summary judgment motion, the plaintiff's motion to compel also is denied as moot.

### PLAINTIFF'S MOTION FOR ORDER PROHIBITING DEFENDANT FROM INTERFERING [*24] WITH WITNESS INTERVIEWS

The plaintiff argues that FedEx has instructed its employees either not to speak to the plaintiff or his counsel, or to refer any inquires from the plaintiff or his counsel to FedEx's legal department. The plaintiff claims that this order has disrupted his ability to gather relevant evidence and violates Title VII's anti-retaliation provision by forcing FedEx employees to risk their good standing with the company in order to assist the plaintiff. The plaintiff has asked for an order prohibiting FedEx from requiring its employees who are not "controlling" the litigation to obtain the permission of FedEx in order to cooperate with the plaintiff or his counsel.

As with the plaintiff's motion to compel, the plaintiff does not contend that summary judgment would be improper because he has been denied certain discovery. Indeed, the plaintiff filed this motion almost a month after the discovery period had closed. Thus, because the Court has granted the defendant's summary judgment motion, this motion also is moot.

A separate order shall issue this date.

July 30, 1997

ROYCE C. LAMBERTH

UNITED STATES DISTRICT JUDGE

### ORDER AND FINAL JUDGMENT

For the [*25] reasons set forth in the Court's accompanying memorandum opinion, it is hereby

ORDERED that the defendant's motion for summary judgment is GRANTED; and it is

FURTHER ORDERED that the plaintiff's motion to compel responses to request for admissions is DENIED; and it is

FURTHER ORDERED that the plaintiff's motion for order prohibiting defendant from interfering with witness interviews is DENIED; and it is

FURTHER ORDERED that the Clerk of the Court shall enter final judgment herein for the defendant, dismissing this action with prejudice.

SO ORDERED.

July 30, 1997

ROYCE C. LAMBERTH

UNITED STATES DISTRICT JUDGE