**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                 )
ENRIQUE BRATHWAITE,              )
                                 )
         Plaintiff,              )
                                 )
     v.                          )      Civil Action No. 06-1367 (GK)
                                 )
VANCE FEDERAL SECURITY           )
SERVICES, INC.                   )
                                 )
         Defendant.              )
_____)
```

## MEMORANDUM OPINION

Plaintiff Enrique Brathwaite ("Plaintiff") brings this action against his former employer, Vance Federal Security Services, Inc. ("Defendant"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981. Plaintiff alleges that Defendant violated Title VII (Count I), 42 U.S.C. § 1981 (Count II), and the public policy of Washington, D.C. (Count III) by discriminating against him on the basis of his race.

This matter is now before the Court on Defendant's Motion for Summary Judgment [Dkt. No. 9]. Upon consideration of the Motion, Opposition, Reply, the entire record herein, and for the reasons stated below, Defendant's Motion is **granted.**

I.      **Background**[1]

On or about September 15, 2003, Defendant employed Plaintiff, an African-American male, as a security guard and assigned him to work at Walter Reed Army Medical Center in Washington, D.C.

Defendant requires its employees to abide by its "Standards of Conduct" policy.  These Standards state that "[a]ssault" is "inappropriate" conduct that "can result in any form of discipline, up to and including immediate termination, as decided in the discretion of Chenega/Vance Federal Security Services."

Plaintiff signed the "Standards of Conduct" form on February 26, 2004.  Def.'s Mot., Ex. B-1.  Plaintiff "acknowledged" that he was "required" to comply with these Standards and that if he violated them, Vance had the sole power to determine an appropriate penalty.

Between December 2003 and February 2004, Plaintiff was cited for the following three disciplinary infractions.[2]  On December 6,

_____

[1]     Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h) and the parties' summary judgment papers.

[2]     Plaintiff does not dispute that he received three "counseling forms."  Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶ 6-8.  Defendant uses these counseling forms to document disciplinary citations.  Plaintiff does dispute the underlying allegations described in these counseling forms, but offers no evidence that these incidents did not occur.  See id. Defendant introduced three counseling forms as exhibits.  Def.'s Mot., Ex. B-1.  Two of these forms contain signatures of Counseling Officers, and one contains a report by a witness.  Id.
(continued...)

2

2003, he was cited for his "attitude towards the client." Def.'s Mot., Ex. B-1. On December 18, 2003, he was cited for "Post abandonment and unauthorized removal of a firearm from a Post." Id. The Counseling Official recommended a three-day suspension and wrote that "[a]ny further violations of company policies will lead to more severe punishment to include possible termination." Id. On February 19, 2004, he was cited for "improperly unloading" his weapon inside the security booth. Id.

On March 13, 2004, Plaintiff was working at the security booth at Walter Reed. An altercation occurred between Plaintiff and another security officer, Shawn Verdine ("Verdine").[3]

---

[2](...continued)
Accordingly, the Court may treat as admitted Defendant's assertion that Plaintiff committed three disciplinary infractions. See LcvR 7(h) (an opposition "shall include references to the parts of the record relied on to support the statement" and "the court may assume the facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in" the opposition; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'") (quoting Fed. R. Civ. P. 56(e)); Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006) ("In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record.") (emphasis in original).

[3]   In his Opposition, Plaintiff uses two different spellings to refer to this officer:  "Verdine" and "Verdini."  Compare Pl.'s Opp'n at 1 with Pl.'s Opp'n at 7.  Defendant consistently uses "Verdine."  See, e.g., Def.'s Mot. at 3.  Accordingly, "Verdine" will be used hereinafter.

3

Plaintiff states that Verdine started the fight, and Verdine states that Plaintiff started it.  According to Plaintiff, Verdine spit on him twice during the fight. Pl.'s Opp'n at 4.

Three other security officers were present: William Collins ("Collins"), Melvin Blassingame ("Blassingame"), and Joseph Barnett ("Barnett").  Verdine is Caucasian.  Collins, Blassingame, Barnett, and Plaintiff are African American.

After the fight, Plaintiff went to the Provost Marshall's office to report the incident to his supervisors, Lieutenant Charles Green ("Green") and Lieutenant Gloria Williams ("Williams").  He arrived at the office with liquid on his face and stated that Verdine had spit on him.  Pl.'s Mot. at 4.  In their Incident Reports, Barnett and Blassingame both stated that they did not see Verdine spit on Plaintiff.  Def.'s Mot., Ex. F.  Thomas Sittner ("Sittner"), Project Manager and Chief of Guards, stated that Brathwaite had liquid on his face, but that he did not believe that the liquid was Verdine's spit.  See id., Ex. E.

On the same day, March 13, 2004, Green began investigating the fight and took statements from Blassingame and Barnett.[4]  Both witnesses stated that Plaintiff started the fight.[5]   In his

---

[4]  The record does not indicate why Collins did not provide a statement.

[5]  Although Plaintiff concedes that "an investigation was conducted and statements were taken," he "denies the remaining allegations."  Pl.'s Response to Def.'s Statement of Undisputed

(continued...)

Incident Report, Barnett stated that "Brathwaite pushed Verdine first and then Verdine pushed Brathwaite." Id., Ex. F.  He also stated that he thought that Brathwaite "went out of his way to have a confrontation with Verdine." Id.

Blassingame provided a similar description in his Incident Report where he stated that "out of my peripheral vision, [I saw] Verdine fall forward and then he turned and pushed Brathwaite." Id.  He also stated that he heard Verdine say, "Don't push me." Id.

After this investigation, Green and Williams each wrote a report.  Green stated that "Brathwaite shoved Verdine from behind and Verdine had a spontaneous reaction shoving Brathwaite causing [sic] Brathwaite to stumble." Pl.'s Opp'n, Ex. 5.  Green concluded that "each officer should be suspended for a lengthy period and Brathwaite reassigned to another post." Id.  Williams stated that "Mr. Brathwaite and Mr. Verdine were both wrong.  Ones [sic] punishment should be no more than the other." Id., Ex. 6.  Neither

---

[5](...continued)
Material Facts ¶ 12.  This denial is unclear because it could refer to two different assertions: first, the assertion that Blassingame and Barnett provided statements indicating that Plaintiff had started the fight or second, the assertion that Plaintiff started the fight.  For the first assertion, Plaintiff provides no contrary evidence, whereas Defendant provided signed statements from Barnett and Blassingame. Compare Def.'s Mot., Ex. F with Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶ 12 (denying the "remaining allegations," but providing no citations to corroborate the denial).  Accordingly, this assertion may be treated as admitted. See supra note 2 (citing Lujan and Hussain).  As to the second assertion, Plaintiff disputes it.

Green nor Williams actually observed the fight.

On March 18, 2004, Sittner conducted his own investigation. The investigation included a review of the videotape footage of the incident[6] and two interviews with Plaintiff.  It also included interviews of the other security guards on duty, Walter Reed police officers, and bystanders.  During the course of the investigation, Barnett and Blassingame told Sittner that he saw Brathwaite push Verdine from behind, and Blassingame told Sittner that he witnessed Verdine "go forward" and then heard him say, "Don't push me."

At the conclusion of the investigation, he prepared a Memorandum on his findings and sent it to Timothy McManus ("McManus"), the Operations Manager.[7]  In this Memorandum, Sittner wrote,

> I believe that Officer Brathwaite was the aggressor in
> this matter.  I also believe that he has lied in his
> statements.  They are not consistent and he refused to
> sign the statement that I took from him.  Most
> compelling are the statements from Barnett and
> Blassingame.  Barnett witnessed Brathwaite push
> Verdine first and Blassingame heard Verdine say,
> "don't push me," just before he heard the noise of
> Brathwaite falling.  This type of spontaneous
> utterance is a clear indication that Verdine had been

---

[6] According to the letter Sittner wrote to Operations Manager Timothy McManus, the videotape footage "supports portions of each officer's account of the incident," but it "does not show the assault by either officer and there is no audio of the incident." Def.'s Mot., Ex. D.

[7] In Plaintiff's Response to Def.'s Statement of Undisputed Material Facts, Plaintiff disputed the "conclusions reached in the report," but does not dispute that the report stated these conclusions.  See ¶ 19.

pushed and was reacting instead of being the aggressor.

Def.'s Mot., Ex. D.  Based on his findings, Sittner recommended that Defendant terminate Plaintiff.

McManus reviewed Sittner's Memorandum.  He concurred with Sittner's recommendation and authorized the termination.  At the time he made the decision to terminate Plaintiff, McManus had never met Plaintiff and did not know his race.

On March 24, 2004, Plaintiff was informed of his termination. On April 12, 2004, Defendant hired Norris Hercules, an African American, to replace Plaintiff.

On November 16, 2004, Defendant terminated Verdine and another officer who were involved in a fight.

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").[8]

In a letter dated February 21, 2006, the EEOC dismissed the charge and found that "[d]ue to the lack of evidence, discriminatory practices cannot be established."[9]  Def.'s Mot., Ex.

---

[8] The filing date is disputed.  See infra III.A.  Plaintiff states that he filed the claim on September 4, 2004.  Defendant states that he filed the claim on April 28, 2005.

[9] Plaintiff denies these assertions in his Response to Def.'s Statement of Undisputed Material Facts.  See Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶ 32.  However, he produced no evidence showing that the EEOC did not make these statements in its February 21, 2006 letter.  See generally id.  In contrast, Defendant attached a date-stamped copy of this letter to his Motion.  See Def.'s Mot., Ex. B-2.  Accordingly, the Court may
(continued...)

B-2.

On or about May 18, 2006, Plaintiff instituted this action in the Superior Court of the District of Columbia.  On August 1, 2006, Defendant filed a Notice of Removal in this Court.

## II.    Standard of Review

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c), as amended December 1, 2007; <u>Arrington v. United States</u>, 473 F.3d 329, 333 (D.C. Cir. 2006).  In other words, the moving party must satisfy two requirements:  first, demonstrate that there is no "genuine" factual dispute and, second, that if there is it is "material" to the case.  "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" <u>Arrington</u>, (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  A fact is "material" if it might affect the outcome of the case under the substantive governing law.  <u>Liberty Lobby</u>, 477 U.S. at 248.

In its most recent discussion of summary judgment, in <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007), the Supreme Court said,

---

[9](...continued)
treat this fact as admitted.  <u>See</u> <u>supra</u> note 2.

> [a]s we have emphasized, "[w]hen the moving party has
> carried its burden under Rule 56(c), its opponent must
> do more than simply show that there is some
> metaphysical doubt as to the material facts. . . .
> Where the record taken as a whole could not lead a
> rational trier of fact to find for the nonmoving
> party, there is no 'genuine issue for trial.'"
> Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,
> 475 U.S. 574, 586-87 . . . (1986) (footnote omitted).
> "[T]he mere existence of some alleged factual dispute
> between the parties will not defeat an otherwise
> properly supported motion for summary judgment; the
> requirement is that there be no genuine issue of
> material fact." Liberty Lobby, 477 U.S. at 247-48.

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 248, 249.  In both Liberty Lobby and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. Liberty Lobby, 477 U.S. at 255.  "To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing that there is a triable issue as to an element essential to that party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)." Arrington, 473 F.3d at 335.

## III.   Analysis

### A.   There is a Genuine Issue of Fact About Whether Plaintiff's Title VII Claim is Time-Barred

A Title VII claim is time barred if it is not filed within 180 days after the "alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1).  If a plaintiff "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," then he is permitted 300 days to file his claim.  <u>Id.</u>  When a plaintiff fails to file his claim within the applicable time period, a court may grant summary judgment for the defendant.  <u>Washington v. Washington Metro. Area Transit Auth.</u>, 160 F.3d 750, 752 (D.C. Cir. 1998).

Defendant argues that Plaintiff's Title VII claim is barred by the statute of limitations because it was filed on April 28, 2005, 400 days after Defendant terminated him on March 24, 2004. In response, Plaintiff argues that Defendant is incorrect and that he filed the claim on September 4, 2004.

To corroborate his argument, Plaintiff submits five documents as attachments to his Opposition: a "Charge Information Questionnaire"; a "Continuation Answer Sheet"; a March 9, 2005 letter from the EEOC's Washington Field Office; a February 17, 2005 letter from the EEOC's Baltimore District Office; and an email from an Intake Supervisor.  Pl.'s Opp'n, Ex. 10.  The Questionnaire includes a hand-written date of September 4, 2004.  The accompanying "Continuation Answer Sheet" uses the same date in

typed form.   Id.   The Baltimore District Office EEOC letter is date-stamped February 17, 2005.   Id.   This letter states that Plaintiff's case is being transferred to the Washington Field Office.   Id.

Plaintiff argues that the Questionnaire and the Continuation Sheet establish that he filed the claim within the prescribed filing period.   Pl.'s Opp'n at 13.   He explains that the discrepancy between the original filing date of September 4, 2004 and the date cited by Defendant -- April 28, 2005 -- resulted from his case being transferred twice: once from the EEOC's Washington Field Office to Baltimore and then again when the EEOC transferred the case back to Washington.   Id.   Defendant responds that the hand-dated form only "purport[s]" to show that he filed his claim on the earlier date.   Def.'s Reply at 7.

The Questionnaire and the Continuation Sheet show that Plaintiff submitted his claim within the filing period, and Defendant cites to no statute or case law stating that a handwritten date is not sufficient to raise an issue of material fact.   In addition, the date-stamped letter of February 17, 2005 corroborates Plaintiff's assertion that the discrepancy in dates resulted from the transfer of the case between the Baltimore and Washington EEOC offices.

For these reasons, the Questionnaire and the Continuation Sheet raise a genuine issue of material fact about the date that

Plaintiff filed his claim.  Cf. Colbert v. Potter, 471 F.3d 158, 166-67 (D.C. Cir. 2006) (affirming a grant of summary judgment when the court determined that "it would be patently unreasonable" to "infer" that the plaintiff had timely filed his complaint). Therefore summary judgment cannot be granted on that ground.

### B.   Plaintiff Has Not Raised an Inference of Discrimination[10]

Discrimination claims pursuant to Title VII are analyzed under the McDonnell Douglas burden shifting framework.  Ginger v. District of Columbia, 527 F.3d 1340, 1344 (D.C. Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); see Hawkins v. Holder, 597 F. Supp. 2d 4, 16-17 (D.D.C. 2009).

Our Court of Appeals recently held that, when considering a motion for summary judgment in an employment discrimination case in which the employer has offered a legitimate, non-discriminatory reason for its actions, a district court need not consider whether a plaintiff has satisfied the elements of a prima facie case. Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

Instead, "'the district court must resolve one central

---

[10]  As Defendant states in its Motion, "[r]ace discrimination claims under Section 1981 are governed by the same evidentiary framework applicable to Title VII race discrimination claims." Def.'s Mot. at 9 (citing Carney v. Am. Univ., 151 F.3d 1090, 1092-93 (D.C. Cir. 1998) (using the McDonnell Douglas framework to analyze a Section 1981 claim)).  Accordingly, the analysis in this section applies to the Section 1981 claim (Count II) as well as to the Title VII claim (Count I).

question: has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason' for the adverse employment actions, and that the employer's actions were discriminatory." Daniels v. Tapella, 571 F. Supp. 2d 137, 143 (D.D.C. 2008) (quoting Brady, 520 F.3d at 494). In other words, a court must determine whether "all the evidence, taken together, was insufficient to support a reasonable inference of discrimination." Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (citing Brady, 520 F.3d at 494-495); see also Holcomb v. Powell, 433 F.3d 889, 896-97 (D.C. Cir. 2006) ("[T]he plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason.")(citations omitted).

In this case, Defendant argues that it had a legitimate, nondiscriminatory reason for firing Plaintiff: he violated the company's "rule against physical assaults." Def.'s Mot. at 14. In response, Plaintiff argues that Defendant's reason is a pretext that "mask[s] unlawful discrimination." Pl.'s Opp'n at 7.

Because Defendant has cited Plaintiff's violation of its "rule against physical assaults" as its legitimate, nondiscriminatory reason for terminating him, it is not necessary to determine whether Plaintiff has made out a prima facie case. Instead, the Court must decide the ultimate question: whether "all

the evidence, taken together, was insufficient to support a reasonable inference of discrimination." Jones, 557 F.3d at 678 (citations omitted).

Our Court of Appeals has specified that "all of the evidence" means "any combination of (1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer." Holcomb, 433 F.3d at 897 (citing Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)). The Court of Appeals has "consistently declined to serve as a super-personnel department that reexamines an entity's business decisions." Holcomb, 433 F.3d at 897 (internal citations and quotation marks omitted).

A plaintiff may show discrimination either directly or indirectly. George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)); see also Hawkins, 597 F. Supp. 2d at 17. Evidence is direct if it shows that a "discriminatory reason more likely motivated the employer." George, 407 F.3d at 413 (internal citations and quotation marks omitted). Evidence is indirect if it shows that "the employer's proffered explanation is unworthy of credence." Id. (internal citations and quotation marks omitted).

Plaintiff offers no direct evidence of discrimination. Instead, he argues that Defendant's reason for terminating him is a pretext that "mask[s] unlawful discrimination."  Pl.'s Opp'n at 7.  There are two ways to show that a nondiscriminatory explanation was false.  First, a plaintiff may show that "the employer is making up or lying about the underlying facts that formed the predicate for the employment decision."  Brady, 520 F.3d at 495 (citations omitted).  Second, a plaintiff may show that a similarly situated employee was treated more favorably.  Id.

### 1.     Plaintiff Has Not Shown that Defendant Lied About the Underlying Facts

Plaintiff first argues that Defendant's "reasons for terminating Mr. Brathwaite are unworthy of credence."  Pl.'s Opp'n at 13.  He argues that Verdine "assaulted Mr. Brathwaite at least once" and the "fact that Vance did not discipline Verdine at all shows that its action against Mr. Brathwaite was discriminatory." Id. at 11, 13.

In response, Defendant states that it decided to terminate Plaintiff because its "thorough investigation" concluded that Plaintiff was at fault. Def.'s Mot. at 16.  In its investigation, Defendant relied on two witnesses, both of whom are African American as is Plaintiff, who stated that Plaintiff started the fight.  Id. at 15.  The investigation also concluded that Plaintiff's statements were "inconsistent." Id. Defendant argues that in light of this evidence, Plaintiff cannot show that its

15

reason for terminating Plaintiff was a "phony" one.  Id. at 16.

As our Court of Appeals stated in George, "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." George, 407 F.3d at 415 (citing Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996)).  In other words, a defendant "could prevail on its motion for summary judgment . . . if it were able to demonstrate the absence of a genuine dispute in the record over whether [it] honestly and reasonably believed" in its given reason.  Id.; see also Forrester v. Rauland-Borg Corp., 453 F.3d 416, 419 (7th Cir. 2006) (Posner, J.) ("A pretext . . . is a deliberate falsehood.  An honest mistake, however dumb, is not, and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage.") (citations omitted).

The Eighth Circuit emphasized the same principle in a recent age discrimination case that is strikingly similar to the one now before this Court.  In Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004), a plaintiff was terminated because he was fighting.  He argued that there was a genuine issue of fact about whether he was "actually fighting."  Id.  In affirming the district court's grant of summary judgment for the defendant, the court held that the "key question in a discrimination case like this one is not whether [the plaintiff] was truly fighting, but whether the employer really believed that he was fighting, such that the termination was based

on a non-discriminatory reason." Id. (emphasis in original; citations omitted).

The Eighth Circuit concluded that the district court properly granted summary judgment for the defendant because it was "undisputed" that witnesses reported that the plaintiff was fighting, even if the plaintiff "could now show that the witnesses were wrong in what they reported about the altercation." Id. at 924-25.

Accordingly, in this case, the relevant issue is not whether Plaintiff did in fact initiate the fight, but rather whether Defendant "honestly and reasonably believed" that Plaintiff initiated the fight.[11] Defendant conducted an investigation into the fight, and the investigation concluded that "Brathwaite was the aggressor in this matter" and that he "has lied in his statements." Def.'s Mot. at 4-5; see also id., Ex. E (Sittner Deposition) ("[A]t that point, I determined that [Plaintiff] was the aggressor, that he was lying in the course of the investigation"). During this investigation, two witnesses informed Defendant that Plaintiff initiated the fight. Id. at 15; see also id., Ex. F (Blassingame and Barnett Incident Reports). Although they also saw Verdine push Plaintiff, both witnesses believed that the fight was initiated by Brathwaite. See, e.g., id., Ex. F ("Brathwaite pushed Verdine

---

[11] As a result, it is also unnecessary to determine whether Verdine spit on Plaintiff.

first and then Verdine pushed Brathwaite who fell into the watercooler.").

Defendant introduced evidence that shows that McManus concurred with these conclusions and used them as the basis for terminating Plaintiff.  Def.'s Mot, Ex. C ("Verdine did not appear to be the aggressor in the matter"); see id. (the reason for terminating Plaintiff was "assaulting another security officer, based on the investigation").  In addition, McManus did not know Plaintiff's race,  Def.'s Mot. at 17, and thus could not have used race as a reason for terminating him.

In contrast, Plaintiff has provided no evidence to show that Defendant did not honestly and reasonably believe that it was terminating Plaintiff because he had initiated the fight with Verdine.[12]

For these reasons, no reasonable juror could conclude that Defendant did not honestly and reasonably believe that it terminated Plaintiff because he initiated the fight.

### 2.    Plaintiff Has Not Shown that a Similarly Situated Employee Was Treated More Favorably

Plaintiff next argues that Defendant's reason is a pretext because Verdine was a similarly situated employee who was treated "better" than Plaintiff.  Pl.'s Opp'n at 11.  Plaintiff argues that Plaintiff and Verdine were similarly situated because they were

---

[12]   Nor did Plaintiff ever make such an argument in his Opposition.

"involved in the same incident with the same people in charge of investigating the incident . . . the same person in charge of recommending disciplinary action . . . and the same person in charge of issuing the disciplinary action."  Id. at 12.

In response, Defendant argues that the employees were not similarly situated because its investigation found that Plaintiff, and not Verdine, was responsible for initiating the altercation. It also argues that Verdine was not treated favorably because it subsequently terminated Verdine when he was involved in an unrelated fight in November 2004.  Def.'s Mot. at 17, Ex. G. Plaintiff argues that this latter incident is "distinguishable" because Sittner and McManus were not "involved with the investigation of this other incident or Vance's decision to terminate Verdine."  Pl.'s Opp'n at 12.

Employees are similarly situated only if "all of the relevant aspects" of their employment situations are "nearly identical." McFadden v. Ballard, et al., 580 F. Supp. 2d 99, 109 (D.D.C. 2008) (quoting Neuren v. Adduci, Mastriani, Meeks, & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995)); see also Brady, 520 F.3d at 495 (employees are similarly situated if they share "the same factual circumstances").  If no reasonable juror could conclude that two employees were similarly situated, then a court may find they were not similarly situated as a matter of law.  See George, 407 F.3d at 414-15; see also Banks v. District of Columbia, 498 F. Supp. 2d

19

228, 234 (D.D.C. 2007).

Here, Sittner conducted an investigation and concluded that Plaintiff had initiated the fight.   McManus concurred with the results of the investigation.   Two witnesses stated in their Incident Reports that Plaintiff was the aggressor in the fight. Thus, Plaintiff and Verdine were not similarly situated because several relevant aspects of their employment situations were distinguishable.   Moreover, Verdine was not treated more favorably. Defendant terminated Verdine when it found him at fault for fighting in a later incident.[13]

In addition, comparing the two employees shows that Defendant's nondiscriminatory reason for terminating Plaintiff was not a pretext that masks discrimination.   Defendant terminated Plaintiff, an African-American employee, when its investigation found him at fault for fighting.   It terminated Verdine, a Causasan employee, when its investigation found him at fault for fighting. In comparing these two incidents, it is clear that the relevant factor distinguishing the treatment of the two employees was not their race.   In both cases, the relevant factor was the employee's role in the fight.   In each case, it terminated the employee it found at fault for fighting.

---

[13]   Plaintiff has not explained the relevance of his assertion that Sittner and McManus participated in one investigation but not the other.   This assertion offers no support for Plaintiff's argument that he and Verdine were similarly situated but treated differently.

For these reasons, Plaintiff has presented no evidence that would allow a reasonable juror to conclude that Verdine was similarly situated to Plaintiff but treated favorably.

**C.     Plaintiff Did Not State a Valid Cause of Action for Termination in Violation of D.C. Public Policy**

Finally, Defendant argues that Plaintiff "cannot state a cause of action for termination in violation of public policy." Def.'s Mot. at 18.

Plaintiff argues that an employee can bring a wrongful discharge claim under the District of Columbia's "public policy exception to the employment-at-will doctrine." Pl.'s Opp'n at 14. Plaintiff alleges that he was fired because he "reported matters of public concern." Pl.'s Opp'n at 14.

This exception to the at-will doctrine is a "very narrow" one in the District of Columbia. See Owens v. Nat'l Med. Care, Inc., 337 F. Supp. 2d 131, 137 (D.D.C. 2004) (citations omitted). An employee states a claim for wrongful discharge in violation of public policy when he alleges that "(1) he engaged in a protected activity . . . (2) the employer took an adverse personnel action against him; and (3) there was a causal connection between the two." Owens, 337 F. Supp. 2d at 137 (citations omitted); see Pl.'s Opp'n at 14. A causal connection exists only if the protected activity was the "sole reason" for the adverse personnel action. Owens, 337 F. Supp. 2d at 141 (emphasis in original) (citing Carl v. Children's Hosp., 702 A.2d 159, 160 (D.C. 1997)); Pl.'s Opp'n at

14.

In this case, as discussed <u>supra</u> III.B, Defendant introduced substantial evidence to show that it terminated Plaintiff because it determined that he was the aggressor in the fight with Verdine. It made this determination after an investigation that included statements by two employees who witnessed the fight.   <u>See</u> <u>supra</u> III.B.   Plaintiff has provided no evidence showing that any other reason motivated Defendant.   Accordingly, no reasonable juror could conclude that protected activity was the "sole" reason for Plaintiff's termination.[14]

## IV.   Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment is **granted.**   An Order shall accompany this Memorandum Opinion.


_____/s/_____
May 11, 2009              Gladys Kessler
                         United States District Judge

**Copies via ECF to all counsel of record**

---

[14]   In addition, there is little reason to doubt the validity of Defendant's argument that Plaintiff did not engage in protected activity.